**Leon JORDAN, et al., Appellants,**

v.

**Fred RASH, et ux., Appellees.**

**Leon JORDAN, et al., Appellants,**

v.

**Betty WHEAT, Appellee.**

**Nos. 10–87–113–CV, 10–87–114–CV.**

Court of Appeals of Texas, Waco.

Feb. 11, 1988.

550

Ted L. Tittsworth, Arlington, for appellants.

Robert C. Dunn, Corsicana, for appellees Rash.

James H. Gill, Corsicana, for appellee Wheat.

## OPINION

THOMAS, Justice.

Leon and Jerry Jordan purchased Tract 14 from Alline Burnett in June 1986 and Tract 3A from Weldon Collins in December 1986. Access to Tract 3A is blocked on the south by a lake and on the north by Tract 8, owned by Fred and Bonnie Rash, and Tract 7 owned by Betty Wheat. Tracts 7 and 8 are contiguous to and situated between Tracts 14 and 3A. The Jordans constructed a road in February 1987 down the boundary line between Tracts 7 and 8 to connect Tract 14, which has access to Highway 287, with Tract 3A. They used the road, which gave them access to Tract 3A from Tract 14, to build a boat dock on Tract 3A.

Wheat and the Rashes, owners of Tracts 7 and 8, filed separate suits to enjoin the Jordans from using the road and to recover damages and attorney's fees. The Jordans contended that they could use the road to access Tract 3A under either an express easement or under an easement by necessity or estoppel. However, the court entered a temporary injunction against them in each suit, which they appeal on common grounds of error. The two appeals are consolidated for disposition, and the temporary injunctions will be affirmed.

The essential facts are undisputed. On November 30, 1984, the heirs of Marshall and Guster McCaslin partitioned among themselves 33.58 acres out of a 70.28-acre tract. In the partition Opal Brewer received Tract 6, Betty Wheat was given Tract 7, and Alline Burnett received Tract 8, all of which were "landlocked" by the remaining unpartitioned property. However, "to provide access to the properties ... and to further provide for the establishment of roadway easements [to] inure to the benefit of the parties upon the future development of the properties being partitioned," the other heirs executed an easement deed which:

SET ASIDE unto [Brewer, Wheat and Burnett], their heirs and assigns, the free and uninterrupted use, liberty and easement in and along that certain passageway or roadway across the said premises described as follows:

[metes and bounds description of easement]

together with the free ingress, egress, regress to and for the said [Brewer, Wheat and Burnett], their heirs and assigns, and ... their guests and tenants, as by ... them shall be necessary or convenient at all times and seasons forever, in, along, or upon said way.

The location of the 1984 easement is shown on the map accompanying this opinion. Alline Burnett sold Tract 8, including all of her "easement interest" in the 1984 easement, to Fred and Bonnie Rash on July 23, 1985.

The McCaslin heirs partitioned the remainder of the 70.28 acres on June 6, 1986, with Bonnie Rash receiving Tract 13 and Alline Burnett receiving Tract 14. On June 6 Brewer, Wheat and Burnett purportedly relinquished the 1984 easement by executing an instrument which recited:

[I]t appears that said easement heretofore granted is not laid out in the most advantageous manner, and the parties are this date executing a new easement to service the tracts of land heretofore set apart to [Brewer, Wheat and Burnett], as well as to provide access to the additional property this date being partitioned, and there [is] no further need for the easement heretofore set aside.

The Rashes, who then owned Tract 8, did not sign the purported relinquishment.

On June 6 the other McCaslin heirs, including Opal Brewer, executed an easement deed to Bonnie Rash, Betty Wheat and Alline Burnett which granted them:

the free and uninterrupted use, liberty and easement in and along that certain passageway or roadway across the said premises described as follows:

[metes and bounds description of easement]

together with the free ingress, egress, regress to and for the said [Rash, Wheat and Burnett], their heirs and assigns, and their guests and tenants, as by them shall be necessary or convenient at all times and seasons forever, in, along, or upon said way.

This easement deed, like the one in 1984, recited that its purpose was "to provide access to the properties this day partitioned, and to further provide for the establishment of roadway easements which will inure to the benefit of the parties upon the future development of the properties being partitioned." The accompanying map shows the location of the 1986 easement.

On June 7, the day after the second easement deed had been recorded, Alline Burnett sold Tract 14 to the Jordans, subject to "any and all easements, rights-of-way ... appearing of record." She also executed an easement deed to the Jordans on December 1 which purported to convey:

"all of the easement rights owned and held by [Burnett] in and to the [1986] Easement, together with the free ingress, egress, regress to and for the [Jordans], their heirs and assigns, and their guests and tenants, as by them shall be necessary or convenient at all times and seasons forever, in, along or upon said way: [metes and bounds description of easement]."

The Jordans then purchased the landlocked Tract 3A from Collins on December 31.

The Rashes and Wheat asked the Jordans in August 1986 to share the cost of building a road along the 1986 easement. When the parties could not agree, the Rashes and Wheat constructed a road from Highway 287, down the boundary line between Tracts 13 and 14 to its intersection with Tract 8, and then along the boundary line between Tracts 14 and 8 to its intersection with Tract 7. The Jordans then constructed a road in February 1987, beginning where the Rash–Wheat road stopped, down the boundary line between Tracts 7 and 8 to its intersection with the north boundary line of Tract 3A. The court temporarily enjoined the Jordans from using the portion of the road that crossed Tracts 7 and 8.

■ The Jordans contend that they had a right to build the road across Tracts 7 and 8 to access Tract 3A under either the 1984 or 1986 easements or under an easement by necessity or estoppel.[1] They had the burden of proving these contentions because the party claiming an easement across another person's land must prove all of the facts necessary to establish its existence. *See Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). Their basic premise is that they could access Tract 3A because it abutted the 1984 and 1986 easements. A similar premise has already been considered and rejected:

> "Rights of way granted or reserved are appurtenant to the dominant tenement, and can be used only for the purposes of that tenement.... *One having a right of way appurtenant to specified land cannot lawfully use the way to reach another tract owned by him to which the way is not appurtenant....* The way is granted for the benefit of the particular land, and its use is limited to such land. Its use cannot be extended to other land, nor can the way be converted into a public way without the consent of the owner of the servient estate."

*Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex.1966) (emphasis added) (quoting 2 Thompson on Real Property, 1961 Replacement Ed., 565–566, § 386). Unless the wording of an easement creates a more extended right of use, the grantee cannot use it to benefit other premises owned by him or others. *See id.* Thus, the Jordans could not use the express easements to benefit Tract 3A, unless their wording extended their use to property to which they are not appurtenant. *See id.; Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex.1979). The wording of both easements, which is similar to that reviewed in *Storms*, did not create such an extended use. *See Storms*, 579 S.W.2d at 449–50. The Jordans failed to prove that they had an express easement across Tracts 7 and 8 to access Tract 3A.

■ They also contend that they could access Tract 3A across Tracts 7 and 8 under an easement by necessity. An easement of necessity can only arise between a grantor and grantee through an implied grant or reservation. *See Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950). The following elements are necessary to create an easement of necessity: (1) a unity of ownership of the dominant and servient estates prior to their severance; (2) access to the landlocked tract must be based on necessity and not convenience; and (3) the necessity for access must exist at the time the dominant and servient estates are severed. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984). Unity of ownership means that the dominant and servient estates were once owned as a single unit or tract. *Id.*

■ The Jordans failed to prove that on November 30, 1984, when Tracts 7 and 8 were severed by partition, that a necessity then existed for the unpartitioned McCaslin land, out of which Tract 14 would later be carved, to have access to Tract 3A across Tracts 7 and 8. There was no evidence, and the Jordans never asserted, that the McCaslin heirs had any right of access to Tract 3A when they severed Tracts 7 and 8 and executed the 1984 easement. The same is true of the severance of Tract 14 and execution of the 1986 easement. An easement cannot create a right or interest in the grantee which the grantor did not possess. *Carrithers v. Terramar Beach Com. Imp. Ass'n*, 645 S.W.2d 772, 774 (Tex.1983). Not having a right of access to Tract 3A, the McCaslin heirs could not create that right by the express easements, nor can equity create it by an implied easement of necessity. *See id.*

The Jordans are not entitled to an easement across Tracts 7 and 8 based on neces-

---

1. The parties disagree on whether the 1984 easement was ever relinquished and on whether the 1986 easement was ever effective. The court assumes for analysis that both easements were effective and appurtenant to Tract 14 and that Tract 14 was the dominant estate and Tracts 7 and 8 the servient estates under the express easements. Tract 14 is also assumed to be the dominant estate and Tracts 7 and 8 the servient estates for the purpose of analyzing the claim by the Jordans that they were entitled to access Tract 3A under an easement by necessity or estoppel.

sity alone because the Rashes and Wheat were strangers to the transaction by which the Jordans purchased Tract 3A. *See Othen,* 226 S.W.2d at 626. The Jordans failed to prove that their action was justified under an implied easement of necessity.

Finally, they claim that the Rashes and Wheat are estopped to deny them an easement across Tracts 7 and 8 to access Tract 3A. An owner of land may be estopped to deny the existence of an easement by making misrepresentations that are acted upon by an innocent purchaser to his detriment. *Storms,* 579 S.W.2d at 451. Essential to the creation of an easement by estoppel is that a misrepresentation be communicated to, believed by, and relied upon by the innocent party. *Id.* at 452. Therefore, the initial question is whether the Rashes and Wheat, by their words or conduct, ever represented to the Jordans prior to their purchase of Tracts 14 and 3A that the 1984 or 1986 easements could be used to access non-appurtenant property or that they would be allowed access to Tract 3A across Tracts 7 and 8. *See id.*

Leon Jordan testified that he bought Tracts 14 and 3A based on a representation by one of the McCaslin heirs that the 1986 easement abutted Tract 3A and based on a plat map showing the 1986 easement abutting Tract 3A. His testimony shows that he purchased the two tracts based on the same erroneous legal assumption he now asserts on appeal: that the 1986 easement would allow the Jordans to access any of their property which abutted it. He never claimed that the McCaslin heirs or anyone else ever represented to him that the 1984 or 1986 easement could be used to access Tract 3A or that he had purchased Tracts 14 and 3A in reliance upon such a representation. Furthermore, he never claimed that the Rashes, Wheat or anyone else ever represented that the Jordans could access Tract 3A across Tracts 7 and 8. Jordan's testimony also shows that the representations he claimed were made about the location of the 1986 easement were true. There is no evidence that the Rashes and Wheat were estopped by any misrepresentations.

The Jordans also argue that the Rashes and Wheat, by building a road along the top portion of the 1986 easement, are estopped by their "unclean hands" from asking for equitable injunctive relief to deny them the same right on the bottom portion of the easement. An easement can only be used for the purposes for which it was created. *See Sun Pipe Line Co., Inc. v. Kirkpatrick,* 514 S.W.2d 789, 792 (Tex. Civ.App.—Beaumont 1974, writ ref'd n.r. e.). The Jordans do not claim, nor is there any evidence to show, that the 1986 easement was created for the purpose of benefitting Tract 3A or that it had ever been used for that purpose.

The Rashes and Wheat could use the top portion of the 1986 easement for its express purpose: as a means of access to Tracts 7 and 8. They did nothing more than what they were entitled to do under the easement when they built the road along the top portion of the easement to access their landlocked property. Furthermore, they could not complain about the Jordans building a road along the bottom portion of the easements as long as the road was used to benefit Tract 14. *See Storms,* 579 S.W.2d at 453. However, they could complain about the easement being used to benefit Tract 3A to which it was not appurtenant. *See id.* The Jordans failed to establish an easement by estoppel. Point six, in which the Jordans allege that equitable relief was barred by proof of "unclean hands", is overruled.

The Jordans claim that the court abused its discretion when it issued the temporary injunctions. A temporary injunction will be reversed on appeal only if the court has clearly abused its discretion or failed to correctly apply the law to undisputed facts. *Manning v. Wieser,* 474 S.W.2d 448, 449 (Tex.1971). Furthermore, an applicant is entitled to a temporary injunction if he pleads and proves a probable right to permanent relief and a probable injury. *Id.* A court abuses its discretion if it issues a temporary injunction, which is an equitable remedy, when the applicant has an adequate remedy at law. *See Pow-*

*ers v. Temple Trust Co.*, 124 Tex. 440, 78 S.W.2d 951, 953–54 (1935). An applicant who has an available legal remedy is not automatically precluded from seeking injunctive relief. *See Repka v. American Nat. Ins. Co.*, 143 Tex. 542, 186 S.W.2d 977, 980 (1945). Injunctive relief is only precluded if the available legal remedy is "adequate" to redress the wrong. *See id.* If the injury threatened will result in irreparable harm, unless restrained, then the available legal remedy is inadequate. *P.U. C. of Texas v. Pedernales Elec. Co-op.*, 678 S.W.2d 214, 219 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

The Rashes and Wheat plead and proved a probable right to permanent injunctive relief because the evidence adduced at the hearing showed that the Jordans did not have any easement, either express, by necessity or estoppel, across Tracts 7 and 8 which they could use to access Tract 3A. Likewise, the Rashes and Wheat plead and proved a probable right of injury by introducing evidence that the road constructed by the Jordans had resulted in the removal of topsoil and the erosion of Tracts 7 and 8, and that acts were being threatened by the Jordans which, if not restrained, would result in further irreparable harm to Tracts 7 and 8. Having met their burden of proof by showing a probable right and probable injury, they were entitled to a temporary injunction. *See Manning*, 474 S.W.2d at 449. The first point of error, in which the Jordans assert that the court failed to properly apply the law to undisputed facts, is overruled. Likewise, the complaints in points four and five, that the court issued the temporary injunctions without any proof of irreparable harm or an inadequate legal remedy, are also overruled.

The Jordans allege in their second point that the court erred when it issued temporary injunctions which failed to preserve the status quo. They argue that the court should have enjoined the Rashes and Wheat from interfering with their right to use the road to access Tract 3A because this was the last peaceful status to be preserved.

The function of a temporary injunction is to maintain the status quo, which is "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953). An invasion of a party's legal rights is not the status to be preserved by an injunction. *See Rendon v. Gulf Oil Corporation*, 414 S.W.2d 510, 513 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

The evidence adduced at the hearing tended to show that the Jordans had built a road across Tracts 7 and 8 to access Tract 3A when they had no right to do so. Access to Tract 3A, which they gained as a result of the violation of the rights of the Rashes and Wheat, was not the status to be preserved. *See id.* Point two is overruled.

The Jordans complain in point three that both temporary injunctions are defective because the court did not state in the orders its reasons for granting them. Rule 683 provides in part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance." Tex.R.Civ.P. 683. This portion of the rule, which is mandatory, requires the court to state in the order the reasons why the applicant will suffer injury if interim injunctive relief is not granted. *State v. Cook United, Inc.*, 464 S.W.2d 105, 106–07 (Tex.1971). Reasons stated in the form of conclusions will not suffice. *General Homes, Inc. v. Wingate Civic Ass'n*, 616 S.W.2d 351, 353 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). Ordinarily, failing to comply with this portion of Rule 683 results in an abuse of discretion and requires a reversal. *See Charter Medical Corp. v. Miller*, 547 S.W.2d 77, 78 (Tex.Civ. App.—Dallas 1977, no writ).

The Jordans also contend in point seven that the temporary injunction issued in Wheat's suit is void because the court failed to set and Wheat failed to file an injunction bond required by Rule 684. *See* Tex.R.Civ.P. 684. A failure to comply with the bond requirement of Rule 684 renders

the temporary injunction order void. *Ex parte Lesher*, 651 S.W.2d 734, 736 (Tex. 1983).

This court, pursuant to the holding in *Jeffries v. Evans Division–Royal Industries*, 510 S.W.2d 579 (Tex.1974), abated both appeals and instructed the trial court to correct the errors alleged in points three and seven. Specifically, the court was instructed to set and require an injunction bond in Wheat's cause and to amend the orders granting the injunctions in each suit to specifically set forth the reasons why the Rashes and Wheat will suffer injury if injunctive relief is not granted pending a trial on the merits. The trial court timely complied with these instructions, as evidenced by the supplemental transcripts in each appeal, and the appeals were reinstated. Accordingly, this court has proceeded to hear the appeals as if such errors had not occurred. *See id.* Points three and seven are overruled because they are now moot.

Affirmed.

U. S. HIGHWAY 287

TRACT NO. 13

TRACT NO. 14

TRACT NO. 15

TRACT NO. 6

EASEMENT
June 6, 1986

ROAD BUILT BY
WHEAT AND RASH

EASEMENT
Nov. 30, 1984

TRACT NO. 7

TRACT NO. 8

ROAD BUILT BY
JORDANS

TRACT NO. 3A

LAKE AREA

LAKE AREA