UNITED STATES INVENTION
CORPORATION, a Texas
Corporation, Appellant

v.

Shelia BETTS, Joe Betts, Jo Hogg
and David Hogg, Appellees

No. 10-14-00281-CV

Court of Appeals of Texas,
Waco.

Opinion delivered and filed
January 14, 2016

James E. Polk II, for Appellant.

R. Neal Green, for Appellees.

Before Chief Justice Gray, Justice Davis, and Justice Scoggins

## OPINION

AL SCOGGINS, Justice

In one issue, appellant, the United States Invention Corporation, a Texas corporation, challenges a directed verdict rendered in favor of appellees, Sheila Betts, Joe Betts, Jo Hogg, and David Hogg. Specifically, appellant asserts that the trial court erred in directing a verdict in favor of appellees because appellant raised a material fact issue regarding an easement over appellees' 5.508–acre tract of land. We affirm.

### I. BACKGROUND

On July 31, 2002, Jo and David Hogg purchased approximately 5.508 acres of land in Navarro County, Texas, from Claude Thomas. In the warranty deed to the Hoggs, Thomas purportedly reserved a thirty-foot wide easement,

> for ingress and egress and the installation, maintenance, repair, and reinstallation of public utilities, along and adjacent to the Northwest property line of the hereinabove described property, said line being the Southeast line of the 5–acre tract conveyed by Grantor herein to Sheila Betts, et al as shown in Warranty Deed recorded in Volume 1465, Page 51, Official Records of Navarro County, Texas.

On appeal, appellees contend that Thomas's reservation was of no effect because he "owned no interest in the property adjoining the Hogg Property." In any event, on October 7, 2011, appellant purchased approximately 16.34 acres of land situated to the southwest of the Hogg property.

The properties in question derive from a common source—49.02 acres in Navarro County, Texas, that were subject to a July 30, 1915 Partition Judgment. As a result of the Partition Judgment, the properties were divided between Hardy Montgomery; Clara Smith; and Frank, Gomey, and Martin Watson. Montgomery and Smith each received 16.34 acres, and the Watsons collectively received 16.34 acres. It is undisputed that appellant is the successor-in-interest to the Smith tract and that appellees are the successors-in-interest to the Watson tract.

Thereafter, appellant filed suit, seeking, among other things, a declaration that it had an implied easement appurtenant or, alternatively, an express easement across appellees' 5.508–acre tract to build a road to appellant's 16.34–acre tract. Appellees responded to appellant's lawsuit by filing: (1) an answer generally denying appellant's allegations; and (2) counterclaims against appellant, alleging trespass to realty and seeking injunctive and declaratory relief. Appellees specifically requested a declaration that appellant has no easement across their property. This case proceeded to trial.

At the conclusion of appellant's case-in-chief, appellees moved for a directed verdict on the ground that appellant had not presented legally-sufficient evidence on both of its theories of easement. The trial court granted appellees' motion for a directed verdict, and appellees proceeded to present their counterclaims. At the close of the evidence, the trial court submitted the case to the jury, which found appellant liable to appellees for trespass to realty. The jury awarded appellees $1,500 in damages and $15,000 in attorney's fees. Subsequently, the trial court signed a judgment based on the jury's verdict. Appellant filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. STANDARD OF REVIEW

We review the grant or denial of a directed verdict under the same standard that we review a legal-sufficiency point. *See Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.*, 393 S.W.3d 492, 515 (Tex.App.—Dallas 2013, pet. denied); *see also Long v. Ahlgren*, No. 11–11–00279–CV, 2013 WL 5890906, at *4, 2013 Tex.App. LEXIS 13498, at *10 (Tex.App.—Eastland Oct. 31, 2013, no pet.) (mem. op.). In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). To sustain a legal-sufficiency challenge, we must find that (1) there is a complete lack of evidence of a vital fact, (2) the court is barred by the rules of evidence or law from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence to prove a vital fact, or (4) the evidence conclusively establishes the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

A directed verdict is proper when: (1) a defect in the opponent's pleading makes the pleading insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Encina P'ship v. Corenergy, L.L.C.*, 50 S.W.3d 66, 68 (Tex.App.—Corpus Christi 2001, pet. denied). The trial court should enter a directed verdict when reasonable minds can only draw one conclusion from the evidence. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 483 (Tex.1984).

## III. ANALYSIS

In its sole issue on appeal, appellant contends that the trial court erred in granting appellees' motion for a directed verdict because probative fact issues exist with regard to appellant's evidence of a legal presumption for an easement over appellees' property.

### A. Implied Easement

An easement is the privilege to use another tract of land for some limited purpose. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.—San Antonio 1996, writ denied). An implied easement attaches to the dominant estate when it is severed from the servient estate if the use of the servient estate is apparent and necessary to the use of the dominant estate. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex.1963); *see Johnson v. Dale*, 835 S.W.2d 216, 219 (Tex.App.—Waco 1992, no writ); *see also Fagan v. Crittenden*, No. 10–04–00042–CV, 2005 WL 428469, at *1, 2005 Tex.App. LEXIS 1492, at *3 (Tex. App.—Waco Feb. 23, 2005, pet. denied) (mem. op.). Use of the servient estate by the dominant estate must be: (1) apparent and existing at the time of severance of the two estates; (2) continuous enough that the parties must have intended its use to pass with the dominant estate; and (3) reasonably necessary to the comfortable enjoyment of the dominant estate. *Johnson*, 835 S.W.2d at 219 (citing *Drye*, 364 S.W.2d at 207–08). "Whether these requirements are met is determined at the time of the severance of the estates." *Lataste Enters. v. City of Addison*, 115 S.W.3d 730, 737 (Tex.App.—Dallas 2003, pet. denied) (citing *Holmstrom v. Lee*, 26 S.W.3d 526, 531 (Tex.App.—Austin 2000, no pet.); *Holden v. Weidenfeller*, 929

S.W.2d 124, 129 (Tex.App.—San Antonio 1996, writ denied)).

At trial, appellant presented evidence of unity of ownership between the dominant and servient estates just prior to the 1915 Partition Judgment. However, appellant produced no probative evidence that the alleged road that constituted the easement existed and was in apparent use in 1915, or that the road had been continuously used since the 1915 partition. Specifically, in support of its claims, appellant tendered a certified copy of the 1915 Partition Judgment; however, the document made no mention of any roads on the properties or any county roads to which the properties would have been connected. Furthermore, appellant proffered the testimony of Allen Clark Fintcher, a licensed surveyor, to establish the existence and continuous use of the easement in question. After examining the various deeds pertaining to the properties and a Google satellite image, Fintcher opined that the road probably would have had to be there for over fifty or sixty years. Considering that the trial took place in May 2014, and assuming Fintcher's speculative time frame, the easement would have only dated back to 1954, at best—or in other words, thirty-nine years after the 1915 Partition Judgment. Fintcher then testified that the road must have been continuously used because it did not have shrubbery and trees growing "within the road." Fintcher clarified that if the road had not been continuously used, "it would be overgrown with vegetation or trees." This is not enough to create a material fact issue showing continuous use of the purported easement dating back to 1915.

Later, Fintcher acknowledged that he does not know where all the roads were in 1915. He also admitted during cross-examination that he has no knowledge "as what kind of arrangements anybody would have had for getting out of this land in 1915." Moreover, given that he was born in 1961, Fintcher denied having any personal knowledge of what the situation at the property was in 1915. And after repeated questioning, Fintcher agreed that he did not know whether the black line representing the alleged easement on the Google satellite image, Plaintiff's Exhibit 5, dated from "1914 or from 1952 or from 1965."

After reviewing the record, we cannot say that appellant proffered more than a scintilla of evidence creating a fact issue as to its implied-easement contention. *See Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex.2008) (per curiam) (stating that more than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions); *Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (noting that when evidence offered to prove a vital fact is "so weak as to do no more than create a mere surmise or suspicion," the evidence is no more than a scintilla and, in legal effect, is no evidence (citing *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983))); *see also Ramirez,* 159 S.W.3d at 903; *Encina P'ship,* 50 S.W.3d at 68. Appellant's evidence in support of its implied-easement contention is no more than a mere surmise or suspicion. *See Hamilton,* 249 S.W.3d at 426; *see also Macias,* 988 S.W.2d at 317. As such, viewing the evidence in the light most favorable to the judgment, we cannot say that the trial court erred in granting appellees' motion for a directed verdict as to appellant's implied-easement argument. *See City of Keller,* 168 S.W.3d at 822; *Helping Hands Home Care, Inc.,* 393 S.W.3d at 515; *Encina P'ship,* 50 S.W.3d at 68; *see also Long,* 2013 WL 5890906, at *4, 2013 Tex.App. LEXIS 13498, at *10.

## B. Express Easement

As noted earlier, appellant sought, in the alternative, a declaration that it has an express easement on appellees' 5.508–acre tract to build a road to appellant's 16.34–acre tract. Apparently, appellant believed that the reservation of an easement in the Hogg Property by Thomas created an express easement appurtenant that attached to appellant's property. However, after reviewing appellant's briefing, it appears that appellant has abandoned its theory of express easement on appeal. Nevertheless, to the extent that it can be argued, we are not persuaded by such an argument.

"A reservation or exception in favor of a stranger to a conveyance is inoperative and cannot operate as a conveyance to the stranger of an interest in land." *MGJ Corp. v. City of Houston*, 544 S.W.2d 171, 174 (Tex.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (citing *Joiner v. Sullivan*, 260 S.W.2d 439 [, 440](Tex.Civ.App.—Texarkana 1953, writ ref'd)). Here, there is no evidence in the record indicating that Thomas owned an interest in appellant's property, nor is there evidence that appellant owned an interest in the Hogg Property. In other words, if Thomas was attempting to reserve an easement for appellant, such a reservation would have failed because appellant was a complete stranger to the transaction. Therefore, based on the foregoing, we cannot say that the trial court erred in granting appellees' motion for a directed verdict.[1] *See City of Keller*, 168 S.W.3d at 822; *Helping Hands Home Care, Inc.*, 393 S.W.3d at 515; *Encina P'ship*, 50 S.W.3d at 68; *see also Long*, 2013 WL 5890906, at *4, 2013 Tex.App. LEXIS 13498, at *10. We overrule appellant's sole issue on appeal.

## IV. CONCLUSION

We affirm the judgment of the trial court.

(Chief Justice Gray dissenting)

TOM GRAY, Chief Justice, dissenting.

The development of property in rural areas continues to raise difficult legal issues. Many of the legal issues relate to access to tracts when the ownership, or more particularly the use of the property, changes. *See Montange v. Hagelstein*, No.10–05–00291–CV, 2006 WL 648115, at *5–7, 2006 Tex.App. LEXIS 1996, at *17–22 (Tex.App.—Waco March 15, 2006, pet. denied) (Gray, C.J., dissenting) (mem. op.). *See also Gaylor v. Stiver*, No.10–12–00305–CV, 2014 WL 1778416, 2014 Tex.App. LEXIS 4763 (Tex.App.—Waco May 1, 2014, no pet.) (mem. op.); *Fagan v. Crittenden*, No. 10–04–00042–CV, 2005 WL 428469, 2005 Tex.App. LEXIS 1492 (Tex.App.—Waco 2005, pet. denied) (mem. op.). *See generally, Coryell Cnty. v. Harrell*, 379 S.W.3d 345 (Tex.App.— Waco 2011, no pet.). The sale of a tract that has been accessed by an unimproved lane or trail

---

1. Additionally, to the extent that appellant argues for an easement by necessity, we note that an easement of necessity can only arise between a grantor and grantee through an implied grant or reservation. *See Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950); *see also Jordan v. Rash*, 745 S.W.2d 549, 553 (Tex.App.—Waco 1988, no writ). And among the elements required to create such an easement is the necessity for access must exist at the time the dominant and servient estates were severed, which, in this case, would be 1915. *See Jordan*, 745 S.W.2d at 553 (citing *Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984)). As stated earlier, appellant offered no probative evidence as to the state of or access to the properties in 1915. Accordingly, we cannot say that appellant proved an easement by necessity. *See Koonce*, 663 S.W.2d at 452; *Othen*, 226 S.W.2d at 626; *see also Jordan*, 745 S.W.2d at 553.

across another tract for decades can become a point of dispute. Sometimes the dispute arises because the new owner's frequency of access by way of the lane is much more often than the predecessor's. The successor sometimes tries to make their access easier by installing gates or make the lane more convenient by fencing along both sides so that they are not burdened by having to stop and open a gate to pass through what otherwise appears to be a cow pasture or a path hewn through brushy undergrowth.

The legal problems such cases present is that the right of access may have been uncontested and arose long ago. In this case, the alleged access arose almost exactly 100 years ago in a partition suit in 1915. The problem is obviously that there is no one with personal knowledge about the specifics of the route used to access the property in question; or more precisely, the question is what property was used to access the subject property. We are not, however, without means to establish the property used as the route to the subject property. We have old maps, old deeds, old photos, and old-timers. We can even throw in some experts in surveying and cartography; possibly even experts in flora and fauna can add to the pool of available evidence. Such individuals may be able to examine the available data: documents, personal recollections, and observations as well as scientific research to describe or explain why they believe access was obtained by a certain route or path.

The appellant in this case did not use all the available tools. But as any good craftsman will tell you, tools cost money and you have to work with the tools you can afford. Thus, an expert on soil compaction or in dating the flora might not have been justified in this particular case to establish the age of the lane. But that risk is allocated to the parties to decide what to present to the fact finder by deciding how much of what type of evidence to place before the fact finder to resolve these difficult questions.

The fact finder may never be able to determine the date of the birth and the life of a lane with certainty. Certainty is not required. The only thing necessary to get the issue before the fact finder is some evidence upon which reasonable minds could differ as to whether the access route has been established.

In this case, based on the record at the time that the trial court granted the motion for a directed verdict, I believe there was enough evidence in the record to leave it up to the fact finder. The Court's opinion lays out much of the evidence that I find sufficient to leave this question in the hands of the jury. While it might not have been enough to convince a fact finder, it is enough that the question should have been left to them to decide.

While I will not summarize all the evidence, I do mention one piece of evidence because of the difference it could make in two ways. This is the evidence of the reservation of the right-of-way by Thomas in the 2002 deed. First I must comment on the legal effect of the reservation. The Court relies on the rule that a stranger to a deed cannot claim a right under it, citing *MGJ Corp. v. Houston*, 544 S.W.2d 171, 174 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) ("A reservation or exception in favor of a stranger to a conveyance is inoperative and cannot operate as a conveyance to the stranger of an interest in land."). On the legal issue, alone, I find that case distinguishable. It was not an access case. It was about use of a parking lot by a subsequent owner of an adjoining lot that was not part of the "subdivision" at the time a private parking lot was created. The parking lot easement

was not created for the use of the adjoining lot and thus the successor to the adjoining lot could be prevented from using the parking lot. Further, the referenced easement in Thomas's deed to the Hoggs was a reservation from the conveyance. This is not simply an exception to the warranty. The area for use as an easement quite simply was not conveyed to the Hoggs, and Thomas could convey the reserved easement rights therein that he did not convey to anyone he desired for any reason he desired. But then again, it is much more likely that Thomas believed and understood that he could not convey the easement necessary for Smith to enjoy her portion of the partition deed. Moreover, I am uncertain of the standing of the Bettses or the Hoggs to challenge the reservation from Thomas's deed.

But the real importance of this reservation lies in its evidentiary value. By Thomas's unwillingness to give a warranty deed to the Hoggs that covered the easement, it is evident that the direct descendent of one of the partition grantees, Thomas, felt that another of the partition grantees, Smith, had the right of access to their tract over this area. When the Hoggs purchased their property, this reservation was clearly manifest on the face of their deed. Such a reservation could drastically impact the buyer's willingness to purchase the property as well as the price the buyer is willing to pay. The fact finder, in this case a jury, should have been allowed to weigh this evidence, along with the surveyor's and other witnesses' testimony about what the road looked like as well as the "Google" image to decide whether the plaintiff had established a basis for the easement as argued. Even a quick review of the Google picture in the record shows clear demarcations of ancient property lines from which the fact finder may have been able to draw reasonable inferences of the long period of time such attributes had existed as the result of the ownership, access, and use of the subject and surrounding property.

In summary, because the hurdle is low to have "some" evidence of the necessity of the road to establish an easement-by-necessity, and because I think the evidence presented before the trial court when it granted a directed verdict met the low hurdle of some evidence, I would reverse the trial court's judgment and remand this proceeding to the trial court for a new trial. Because the Court affirms the judgment of the trial court, I respectfully dissent.