

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00049-CV

RALPH LEE, Appellant

V.

TOM JORGENSON, Appellee

On Appeal from the 220th District Court
Hamilton County, Texas
Trial Court No. CV13919

Before Stevens, C.J., van Cleef and Morriss,* JJ.
Memorandum Opinion by Justice van Cleef

*Josh R. Morriss, III, Chief Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Ralph Lee sued Tom Jorgenson, in his individual capacity, alleging that Jorgenson failed to pay for Wagyu cattle sold in a "handshake deal." Lee appeals the trial court's entry of a take-nothing judgment against him following a directed verdict granted in Jorgenson's favor. On appeal, Lee argues that the trial court erred by directing a verdict.[1] Because a written contract between Lee and T.J.'s Cattle Company, LLC, covered the subject matter, and because Lee sued Jorgenson only in his individual capacity, we find that the trial court's directed verdict was proper.

## I.     Background

In his original petition, Lee alleged that he had entered into an agreement with Jorgenson for the sale of cattle. The petition asserting a breach of contract recited that Jorgenson had paid $245,198.56, but still owed $76,104.56 "[b]ased on a verbal agreement." Jorgenson filed a verified answer asserting (1) that he could not be sued in his individual capacity because any contract was between Lee, d/b/a "Graham Land & Cattle," and T.J.'s Cattle Company, LLC, and (2) that the statute of frauds barred Lee's breach of an alleged oral contract.

In his amended petition, Lee attached an affidavit stating that his agreement with Jorgenson "was contained in [a] 'Cattle Purchase Agreement [CP Agreement],'" which was reduced to writing.[2] The CP Agreement attached to Lee's petition included price terms for

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]The CP Agreement was not signed by Jorgenson.

2

"Fullblood Wagyu Steers," stated that the bill was to be sent to "TJ's Cattle Co.," and noted that payments had been made by "TJ's Cattle Co. LLC." The petition also said that Jorgenson had prepared "three separate billings" that "constitute[d] a contract as to the calculations of values of the Wagyu Cattle." Lee's petition attached an affidavit, which stated (1) that he and Jorgenson came to an agreement on the price of cattle, (2) that most of the cattle were picked up from Lee's property, (3) that Lee had not yet been fully paid for the cattle, and (4) that Jorgenson had failed to pay Lee for feeding some of the cattle that had remained on his property for a time. In addition to breach of contract, Lee also asserted quantum meruit and unjust-enrichment claims. In answering the amended petition, Jorgenson responded (1) that Lee "failed to . . . deliver cattle in conformity with the specification of the contract," (2) that any quantum meruit claim was barred by express contract, and (3) that recovery for unjust enrichment was barred by the statute of limitations.

At trial, Lee testified that he had been in the cattle business for fifty years and had been selling Wagyu cattle for over fifteen years. He met Jorgenson at a cattle convention and sold cattle to Jorgenson on several occasions. As for the deal at issue, Lee said that he had no knowledge that any entity was involved in purchasing the cattle and instead said that he negotiated with Jorgenson. According to Lee, Jorgenson had prepared the CP Agreement. The CP Agreement provided that the "Fullblood Wagyu Steers, 1500lb" would have a minimum of nine percent intramuscular fat, but Lee admitted that he was advised that the cattle did not have that grading.[3]

---

[3]Lee admitted that he did not know what the cattle weighed.

Even though Lee's pleadings and affidavit indicated that the CP Agreement set forth the proper pricing, Lee testified that the CP Agreement contained "discrepancies on the prices and on the weights" of the cattle from the alleged oral agreement.[4]  Yet, in response to requests for admissions, Lee stated that the CP Agreement "did set out the agreed upon charges."  Lee testified that payment came from "TJ Cattle Company," among other entities.

Jorgenson testified that the contract to purchase cattle was made on behalf of TJ's Cattle Company, LLC, which created the CP Agreement.  Jorgenson's testimony that TJ's Cattle Company was a limited liability company and that he only owned fifty percent of the stock was uncontested.  Jorgenson said that he personally handed the CP Agreement to Lee after it was prepared and that Lee did not object to it until months later.[5]  According to Jorgenson, it was "common knowledge" that he did not personally own the cattle since they "talked about [their] companies often."  Jorgenson testified that the cattle did not meet the agreed-upon weight or grade requirements.  Jorgenson testified, and an invoice showed, that "TJ Cattle" paid the bill for processing the cattle.  While payments were made toward the purchase of cattle, Jorgenson did not individually make the payments.

After Lee's and Jorgenson's testimony, Jorgenson moved for a directed verdict on several grounds.  Among other things, Jorgenson argued that (1) the statute of frauds barred any oral

[4]The CP Agreement provided that "Fullblood Wagyu Steers 1100-1200 lbs" were priced at "$1.60/lb" and that "Fullblood Wagyu Steers, 1500 lb fats," were priced as follows: "Minimum [Intramuscular fat] IMF 9 @ $1.75/lb," "IMF 8 = deduct $500 per head," and "IMF 5-7 return for payment."  Lee said, "Our agreement was that 600 pounds would be used for the figure on all the heifers at $1.65, and 600 pounds would be the weight used for all of the steers at $1.75 per pound."  Jorgenson argued that Lee attempted to change the pricing clearly stated in the CP Agreement.

[5]*See* TEX. BUS. & COM. CODE ANN. §§ 2.201(b), 2.104 (barring use of parol evidence from contradicting terms of written confirmation of contract between merchants absent objection made within ten days of receipt); *see also RK Greenery Inc. v. Texoma Plant & Tree Farms, LLC*, No. 06-08-00126-CV, 2009 WL 1514927, at *2 (Tex. App.— Texarkana June 2, 2009, no pet.) (mem. op.).

agreement, (2) Jorgenson was not individually liable because the CP Agreement forming the basis of the breach of contract claim in Lee's live pleading was between Lee and TJ's Cattle Company, LLC, (3) the existence of the CP Agreement barred the quantum meruit claim, and (4) the unjust-enrichment claim was barred by the statute of limitations. After hearing Jorgenson's motion, the trial court entered a directed verdict against Lee.

## II.    Standard of Review

"We review the grant or denial of a directed verdict under the same standard that we review a legal-sufficiency point." *United States Invention Corp. v. Betts*, 495 S.W.3d 20, 23 (Tex. App.—Waco 2016, pet. denied). "[W]e consider the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). To sustain Lee's challenge,

> we must find that (1) there is a complete lack of evidence of a vital fact, (2) the court is barred by the rules of evidence or law from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence to prove a vital fact, or (4) the evidence conclusively establishes the opposite of a vital fact.

*Id.* (citing *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004)).

Entering a directed verdict is proper if (1) there is a defect in the opponent's pleading rendering it "insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact." *Id.* (citing *Encina P'ship v. Corenergy, L.L.C.*, 50 S.W.3d 66, 68 (Tex. App.—Corpus Christi 2001, pet. denied)). "The trial court should enter

5

a directed verdict when reasonable minds can only draw one conclusion from the evidence." *Id.* (citing *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 483 (Tex. 1984)). On appellate review, "[w]e may affirm a directed verdict on any ground that supports it." *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied)).

## III. The Trial Court's Directed Verdict Was Proper

"A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Lee's argument that the trial court erred by directing a verdict is based on the idea that he was not aware he was contracting with an entity. Even though the CP Agreement attached to his own petition listed the buyer as "TJ's Cattle Co.," Lee stated that he did not know it was a limited liability company.[6] Instead, Lee argues that he believed he sold cattle to Jorgenson individually and, as a result, that Jorgenson was individually liable for Lee's claims of breach of contract, quantum meruit, and unjust enrichment. For the reasons stated below, we reject this argument.

### A. Lee Brought His Breach of Contract Action Against the Wrong Party

At trial, Lee argued that he had entered into an oral agreement with Jorgenson in his individual capacity. Even so, "[t]he statute of frauds requires a contract for the sale of goods for

---

[6]"Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." TEX. BUS. ORGS. CODE ANN. § 101.114. Also, except for certain circumstances not present here, a shareholder is not individually liable for the debts of a corporation. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.223(a), 101.002(a).

the price of $500.00 or more to be memorialized by a writing sufficient to indicate that a contract was made." *RK Greenery Inc. v. Texoma Plant & Tree Farms, LLC*, No. 06-08-00126-CV, 2009 WL 1514927, at *2 (Tex. App.—Texarkana June 2, 2009, no pet.) (mem. op.) (citing TEX. BUS. & COM. CODE ANN. § 2.201). Because cattle are goods and Lee's sale involved more than $500.00, Lee's alleged oral contract with Jorgenson was subject to the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 2.105(a) (Supp.) (providing that even the "unborn young of animals" constitutes "goods"). [7]

Lee's own live petition and admissions identified the CP Agreement as a writing that complied with the statute of frauds. Critically, the CP Agreement, which was not signed by Jorgenson, identified "TJ's Cattle Co.," a limited liability company, as the buyer. Under Section 2.202 of the Texas Business and Commerce Code, written terms of a confirmatory memorandum "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." TEX. BUS. & COM. CODE ANN. § 2.202. As a result, to the extent that Lee sought to enforce an oral agreement, it was barred by the statute of frauds. [8] To the extent that Lee sought to enforce the CP Agreement, Lee could not alter the identity of the buyer. [9]

---

[7]Lee mistakenly argues that the statute of frauds was not raised as a ground for granting the motion for a directed verdict. We disagree. In reply to Lee's response to the motion for directed verdict, Jorgenson argued, "We have got statute of frauds. It has been in the answer since this case was filed." Because this argument was made prior to the trial court's ruling, the statute of frauds argument was timely invoked. Moreover, we affirm the trial court's ruling "on any ground that supports it." *RSL-3B-IL, Ltd.*, 470 S.W.3d at 136.

[8]The statute of frauds required the writing to be signed by the party to be charged. *See* TEX. BUS. & COM. CODE ANN. § 2.201(a). Here, there was no evidence that Jorgenson signed any written contract.

[9]Lee argues that this case is similar to *Gordon v. Leasman*, 365 S.W.3d 109, 116 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Because that case did not involve the statute of frauds, which governs this dispute, we find *Gordon* inapplicable.

7

The evidence at trial failed to show that Jorgenson, individually, breached any valid contract. Instead, it established both that Lee's alleged oral agreement was unenforceable under the statute of frauds and that Jorgenson, in his individual capacity, was not a proper party to any alleged breach of the CP Agreement. Because TJ's Cattle Co. was not a party to the suit and because the CP Agreement could not be enforced against Jorgenson individually, we conclude that the trial court's directed verdict on Lee's breach of contract action was proper.

**B.      The Existence of a Contract Barred Quantum Meruit Recovery**

"Quantum meruit is an equitable theory of recovery intended to prevent unjust enrichment when there is an implied agreement to pay for goods or services provided." *R.M. Dudley Const. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) (citing *In re Kellogg Brown & Root*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding); *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Id.* (quoting *Vortt Expl.*, 787 S.W.2d at 944); *see Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 563 n.9 (Tex. 2014). "Stated another way, a party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished." *R.M. Dudley Const. Co.*, 258 S.W.3d at 703 (citing *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) (per curiam)).

Lee admitted that the CP Agreement was a valid contract for the sale of cattle. His affidavit, which was attached to his live pleading, also stated, "[S]ales were all subject to one agreement between us . . . contained in [a] 'Cattle Purchase Agreement.'" Under the precedent

8

of the Waco Court of Appeals, we find that the existence of a contact "preclude[d] recovery under quantum meruit as a matter of law." *Id.* As a result, the trial court did not err in entering a directed verdict on Lee's quantum meruit claim.

### C.      The Statute of Limitations Barred Any Unjust-Enrichment Claim

Next, the two-year statute of limitations applies to unjust-enrichment claims. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003. Lee's original petition was based on an agreement to sell cattle. In an amended petition, Lee sought to recover $1,299.28 for the cost of feed under an unjust-enrichment theory based upon a newly alleged oral agreement.[10] We find that Lee's unjust-enrichment cause of action was barred by the statute of limitations.

The CP Agreement was executed in 2017. Referring to a different agreement, Lee testified that Jorgenson did not "have enough grass right then and that he needed to leave [some cattle] for a few weeks, and he left them a little longer than that, but [Jorgenson] agreed to pay [Lee] for feed and care."[11] The evidence at trial showed that the cattle were taken from Lee's property in January 2018, at the latest. As a result, the unjust-enrichment cause of action accrued

---

[10]At the directed verdict hearing, Jorgenson argued that the cattle belonged to TJ's Cattle Co. and that he, individually, was not enriched by Lee's care of cattle belonging to TJ's Cattle Co. We need not address this argument.

[11]We note that, "[g]enerally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *TransAm. Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied)). "That is because parties should be bound by their express agreements." *Id.* "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Id.* (citing *TransAm. Nat. Gas Corp.*, 933 S.W.2d at 600). "Accordingly, when a party claims that it is owed more than the payments called for under a contract, there can be no recovery for unjust enrichment 'if the same subject is covered by [the] express contract.'" *See id.* (quoting *TransAm. Nat. Gas Corp.*, 933 S.W.2d at 600).

no later than January 2018.  Yet, Lee's original petition filed on December 30, 2019, did not contain any unjust-enrichment cause of action and did not mention any separate agreement to pay for feed.  Instead, the first claim for unjust enrichment based on an agreement to pay for feed was not filed until May 22, 2020.  Because the unjust-enrichment claim was based on a new alleged contract[12] and was filed well outside the two-year bar, we find that the trial court properly directed verdict on this cause of action.

## IV.    Conclusion

We affirm the trial court's directed, take-nothing judgment.


Charles van Cleef
Justice


Date Submitted:        December 5, 2022
Date Decided:          January 11, 2023

---

[12]We note that, "[i]f a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability . . . is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.068.  Because Lee's unjust-enrichment claim was based on a new oral contract separate from the transaction or occurrence raised in the original petition, Lee's unjust-enrichment claim did not relate back to the original petition.  *See id.*; *Allen Drilling Acquisition Co. v. Crimson Expl. Inc.*, 558 S.W.3d 761, 775 (Tex. App.—Waco 2018, pet. denied).