**Opinion filed June 8, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00201-CV
_____

**VAN MARTIN GASKINS, TRUSTEE OF THE VAN MARTIN GASKINS FAMILY TRUST; KELLY JOE GASKINS, TRUSTEE OF THE KELLY JOE GASKINS FAMILY TRUST; AND KAYLA GASKINS MCDONNELL, TRUSTEE OF THE KAYLA GASKINS MCDONNELL FAMILY TRUST, Appellants**

**V.**

**NAVIGATOR OIL & MINERALS, INC.; WARRIOR EXPLORATION, LLC; PATRICK BANAISE BLAKE; MITCHELL C. MEYERS; MICHAEL J. DANIEL; SPENCER EVANS BLAKE; RILEY BLAKE LEADER; AND PATRICIA DALBY MATTHIES, Appellees**

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 53849**

**O P I N I O N**

In this appeal we must (1) construe the provisions of a correction deed that was executed in 1960 and (2) decide what royalty interest amounts were reserved for the grantor and what amounts were conveyed to the grantees under the deed.

At one time, J.S. Clay owned the entire mineral interest in the subject property. In the 1950s, Clay and his family conveyed a 20/160 royalty interest in the property to third parties who are not involved in the underlying suit. The core of the parties' dispute on appeal focuses on the extent to which the remaining 140/160 royalty interest in the property was divided in a 1960 conveyance between Clay and Joe Mac and LaVerne Gaskins. Appellees, the Navigator parties, are Clay's successors-in-interest; Appellants, the Gaskins trustees, are successors-in-interest to Joe Mac and LaVerne.

It is undisputed that the original general warranty deed equally divided the remaining 140/160 royalty interest to Clay (70/160) and Joe Mac and LaVerne (70/160). But a correction deed was executed soon thereafter that changed certain language and interests that were conveyed in the original deed. The parties to this appeal contest the validity of the correction deed and its effect on the division of the remaining 140/160 royalty interest—whether it changed the division to 90/160 for Clay and 50/160 for Joe Mac and LaVerne, as Appellees urge, or retained the original equal division of 70/160 to each, as Appellants contend.

Appellees filed suit against Appellants and asserted claims for declaratory relief and to quiet title. Appellants answered and filed a counterclaim in which they asserted claims for declaratory relief, to quiet title, trespass to try title, and, alternatively, breach of warranty of title. Appellees also asserted various affirmative defenses to Appellants' counterclaims. After extensive discovery, Appellants filed a motion for partial summary judgment, and Appellees filed a traditional and no-evidence cross-motion for summary judgment. The trial court granted Appellees'

motion, denied Appellants' motion, and overruled all evidentiary objections raised by the parties.

In six sub-issues, Appellants contend that the trial court erred when it granted Appellees' motions for summary judgment and denied Appellants' motion because (1) both the original deed and the correction deed consistently convey a 70/160 royalty interest to the Gaskins; (2) the correction deed is void and invalid; (3) Appellees are estopped from claiming a royalty interest greater than 70/160; (4) Appellees failed to defeat Appellants' counterclaims as a matter of law; (5) Appellees failed to establish any affirmative defenses as a matter of law; and (6) for all of these reasons, the trial court erred when it entered declarations and quieted title in favor of Appellees and refused to enter declarations and quiet title in favor of Appellants.

We hold that the Correction Deed (1) is valid and enforceable, (2) unambiguously conveyed a 70/160 royalty interest to Joe Mac and LaVerne, and (3) excepted and reserved a total royalty interest of 90/160 unto Clay and his heirs and successors, which includes the previously conveyed 20/160 royalty interest that is owned by unrelated third parties. We further hold that Appellants' trespass-to-try-title counterclaim fails as a matter of law. Accordingly, we affirm in part, and we reverse and render in part.

## I. *Factual Background*

Clay owned certain property[1] and mineral rights in Howard County which included a 140/160 royalty interest in the property. On March 23, 1960, by General Warranty Deed and consistent with the Contract for Sale, Clay conveyed to Joe Mac and LaVerne the surface and mineral estate, a one-half interest in the executory rights and bonuses, and a "70/160ths interest in royalty" in the property. Clay, as

---

[1]NE/4 Section 21, Block 34, T-2-N, T & P Ry. Co. Survey, Howard County, Texas.

grantor, reserved and retained for himself, and his heirs and successors, one-half of his original 140/160 royalty interest—the remaining 70/160 royalty interest. Like the Contract for Sale, the March 23, 1960 original deed also acknowledged, and the parties concede on appeal, that Clay had previously conveyed 20/160 of the royalty interests in the subject property to unrelated third parties.

Twenty-three days later, Clay and Joe Mac signed and recorded a Correction Deed. The purpose of the Correction Deed was to clarify the scope of the interests conveyed in the original deed. According to Appellees, the original deed (1) erroneously conveyed only one-half of the executive rights to Joe Mac and LaVerne, (2) erroneously failed to except and reserve for Clay, and his heirs and successors, a 90/160 royalty interest, and (3) failed to separately except and reserve the 20/160 royalty interest that had been previously conveyed to certain unrelated third parties. Hence, in addition to clarifying the scope of the conveyed interests, the Correction Deed was executed to correct these errors.

The Correction Deed conveyed to Joe Mac and LaVerne "all" of Clay's interests in the property; however, it also included the following reservation:

> EXCEPT that the Grantor [Clay] reserves unto himself, his heirs, executors and assigns, an undivided 90/160ths of the oil royalty, gas royalty, and royalty in other minerals, together with the right to receive one-half (1/2) of all bonuses, and delay rentals paid to the Grantee in connection with the leasing of such land for oil, gas and other minerals.
>
> It is the intention hereof to grant unto the grantee the right to execute all oil, gas and other mineral leases on such land without the joinder of the grantor, his heirs or assigns, but one-half (1/2) of the proceeds of such leasing is to be paid over to the grantor herein. Third Parties, who are not parties to this deed own 20/160ths of the oil royalty, gas royalty and royalty in other minerals, and this ownership by Third Parties have been excepted in this conveyance in favor of such Third Parties, but the remaining portion of the exceptions herein are to remain the property of the Grantor, his heirs, executors and assigns.

4

LaVerne did not sign the Correction Deed. However, the Correction Deed recites that Joe Mac, by his signature, accepted the changes *"on behalf of the Grantees"* (which included LaVerne) and acknowledged that he and LaVerne each agreed to the Correction Deed's terms (emphasis added).

Two years later, Clay died testate. Since Clay's passing, the royalty interests owned by Clay, Joe Mac, and LaVerne were transferred to their respective heirs through a series of bequests and devises.

Appellees traced their chain of title to Clay's estate. In his will, Clay bequeathed all his property to his sister, Mattie Coker. During Clay's probate proceedings, an inventory of Clay's estate was filed which listed among his assets a "70/160th of the royalty" in the subject property. When Mattie died, she bequeathed "all" her property to her children, Margaret Dalby and James Coker—each inherited one-half of Clay's royalty interest, whatever it was at the time. James died and one-half of his property was devised equally to his daughter, Patricia Coker, and to his wife, Camelia Coker. Thus, Patricia and Camelia each received one-quarter of Clay's royalty interest, whatever it was at the time. When Margaret died, her real estate was devised to Pat Matthies, thus leaving Matthies one-half of Clay's royalty interest.

Appellees acquired Patricia and Camelia's royalty interests. As part of their due diligence before purchasing Patricia and Camelia's royalty interests, representatives for Navigator Oil and Minerals, Inc. reviewed public documents and probate records concerning Clay's estate and the Cokers' chain of title. In his report, Navigator's agent preliminarily concluded that Clay held a 90/160 royalty interest in the property, but the report also recognized that further investigation into Clay's probate proceedings was necessary to accurately determine the disposition of his estate. Navigator's agent filed the records from Clay's probate proceedings, including the inventory that listed Clay's royalty interest in the property as being

5

70/160, in Howard County as part of Navigator's chain of title. One day before purchasing the Cokers' royalty interests, Navigator sent them a letter confirming their agreement and stating Navigator's intention to assist in resolving certain unpaid royalties for the "Gaskins 21 #3 well."

When Navigator purchased the Cokers' royalty interests, which combined were equal to one-half of Clay's royalty interests, Navigator attached an exhibit to the agreement that indicated the Cokers purportedly owned a 45/160 royalty interest in the property. The other half of Clay's royalty interest remained with Matthies. Appellees contend that if the Cokers' combined one-half interest and Matthies' one-half interest are each equal to a 45/160 royalty interest, the total of their combined interests—the sum of Clay's interest that remained after the 1960 conveyance as recited in and corrected by the Correction Deed—would be 90/160. Therefore, because it is undisputed that 20/160 of the royalty interests are held by unrelated third parties, a mathematical consequence of the Cokers' and Matthies' combined interests, if Appellees' description is accurate, is that the Gaskins parties' royalty interest is only 50/160. In other words, the interests conveyed by Clay pursuant to the Correction Deed would have reduced the interest conveyed to Joe Mac and LaVerne in the original deed by 20/160 (the disputed interest). However, and according to Appellants, the Cokers' and Matthies' interests could only be 35/160 each, which would equal a combined interest of 70/160.

A week after acquiring the Cokers' interests, Navigator conveyed its royalty interests to itself and several other parties, who, for purposes of this appeal, are collectively the Navigator parties (Appellees in this suit).[2] This conveyance also purported to convey a 45/160 royalty interest.

---

[2]Matthies is also a plaintiff-appellee in this case and aligned with the Navigator parties.

The parties' battle began when Appellees claimed that they had succeeded to a 90/160 royalty interest in the property and that Appellants only succeeded to a 50/160 interest, rather than the equal 70/160 interests that Appellants believed was conveyed. Approximately three years after Navigator purchased the Cokers' interests, Appellees filed suit against the Gaskins' successors-in-interest, Appellants, seeking declaratory relief and to quiet title. Appellants answered and counterclaimed for trespass to try title, declaratory relief, to quiet title, and for breach of warranty of title. In response to the counterclaims, Appellees also asserted the affirmative defenses of limitations and estoppel by deed.

In their pleadings, Appellees alleged that the 90/160 royalty interest exception in the Correction Deed did not include the later mentioned 20/160 royalty interest owned by the unrelated third parties but, rather, that these two excepted fractional interests in the Correction Deed constitute two separate and independent exceptions from the general grant of "all" of Clay's interests. In other words, Appellees argue that the Correction Deed reduced the total royalty interest conveyed to Joe Mac and LaVerne to a 50/160 interest—which is all that remained of Clay's 140/160 interest after his 90/160 excepted interest *and* the 20/160 excepted interest that was separately owned by third parties are deducted.

Conversely, Appellants alleged that the only terms that the Correction Deed changed was the designation of executive rights and a notation of lien ownership, and that the 90/160 royalty interest excepted in favor of Clay *includes* the 20/160 interest owned by the unrelated third parties. Thus, the division of the royalty interests as recited in the original deed did not change when the Correction Deed was executed. As such, and according to the terms of the Correction Deed, both Clay and the Gaskins (Joe Mac and LaVerne) held equal 70/160 royalty interests in the property.

Appellants filed a motion for partial summary judgment on their claims for declaratory relief, to quiet title, and for trespass to try title. Appellees filed a traditional motion for summary judgment on their claims for declaratory relief and to quiet title, their affirmative defenses of limitations and estoppel by deed, and to challenge the merits of Appellants' counterclaims. Appellees also filed a no-evidence motion for summary judgment and challenged Appellants' breach of warranty claim. Further, the parties filed objections to portions of the others' summary judgment evidence.

After a hearing, the trial court entered a final judgment in which it denied all evidentiary objections asserted by the parties, granted Appellees' motion for summary judgment, denied Appellants' motion, and declared that Clay had conveyed only a 50/160 royalty interest in the property to Joe Mac and LaVerne. This appeal followed.

## II. *Standard of Review – Summary Judgment*

We review a trial court's grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). When we review either a traditional or a no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Id.*; *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014).

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Eagle Oil & Gas*, 619 S.W.3d at 705; *see also* TEX. R.

CIV. P. 166a(c). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). For a trial court to grant a defendant's traditional motion, the defendant must conclusively negate at least one essential element of the cause of action being asserted against it or conclusively establish each element of a defense or affirmative defense that it raises. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

"To defeat a no-evidence motion [for summary judgment,] the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *see also* TEX. R. CIV. P. 166a(i). Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion of a fact." *KMS Retail Rowlett, LP*, 593 S.W.3d at 181.

When a trial court does not specify upon which grounds it grants summary judgment, we will affirm if any of the theories raised are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Ordinarily, when a party moves for summary judgment on both no-evidence and traditional grounds, we consider and address the no-evidence grounds first. *Lightning Oil*, 520 S.W.3d at 45; *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). However, "if the movant in a traditional motion challenges a cause of action on an independent ground, we consider that ground first because it would be unnecessary to address whether a plaintiff met his burden as to the no-evidence challenge if the cause of action is barred as a matter of law." *Womack v. Oncor Elec. Delivery Co.*, No. 11-17-00233-CV, 2019 WL 3023516, at *3 (Tex. App.—Eastland July 11, 2019,

9

pet. denied) (mem. op.); *see also Lotito v. Knife River Corp.-S*, 391 S.W.3d 226, 227 n.2 (Tex. App.—Waco 2012, no pet.).

When the parties file competing summary judgment motions and the trial court grants one motion and denies the other, as in this case, we review all of the summary judgment evidence, determine the issues presented, and render the judgment that the trial court should have rendered. *Lightning Oil*, 520 S.W.3d at 45 (citing *Merriman*, 407 S.W.3d at 248).

III. *Applicable Law*

A. *Principles of Deed Construction*

Neither party contends that the 1960 Correction Deed is ambiguous, and we agree that it is not. "A [deed] is not ambiguous merely because the parties disagree about its meaning and may be ambiguous even though the parties agree it is not." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Samson Expl.*, 521 S.W.3d at 787). "Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo using well-settled contract-construction principles." *Id.*; *Endeavor Energy Res., LP v. Trudy Jane Anderson Testamentary Tr. ex rel. Anderson*, 644 S.W.3d 212, 224 (Tex. App.—Eastland 2022, pet. denied).

"If a [deed] is so worded that it can be given a definite or certain legal meaning when so considered and as applied to the matter in dispute, then it is not ambiguous." *URI*, 543 S.W.3d at 765 (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). "But if [deed] language is susceptible to more than one reasonable interpretation when so viewed, an ambiguity exists." *Id.*

When construing an unambiguous deed, our objective is to ascertain the true intentions of the parties as expressed within the four corners of the deed. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323,

333 (Tex. 2011)); *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). Because this entails a holistic approach, we examine the entire instrument and seek to harmonize and give effect to all its provisions. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 746–49 (Tex. 2020) (citing *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991)).

The objective manifestations of the parties' intent—the words they chose to use in the instrument—control, not what either party may have subjectively intended. *URI*, 543 S.W.3d at 763–64; *see Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016). In other words, what controls is not the intent that the parties meant but failed to express; rather, it is the intent that the parties did, in fact, express. *Luckel*, 819 S.W.2d at 462; *Brooke-Willbanks v. Flatland Mineral Fund*, 660 S.W.3d 559, 564 (Tex. App.—Eastland 2023, no pet. h.). Grammar can be crucial to proper construction. *Tx. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 132 (Tex. 2018) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 141 (2012)). And "[g]rammatical usage is not separate from textual meaning." *Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 382 (Tex. App.—Eastland 2013, no pet.) (citing *Gen. Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 522 (Tex. App.—Fort Worth 1995, no writ)).

In discerning the parties' intent, "words and phrases must be construed together and in context, not in isolation." *Hysaw*, 483 S.W.3d at 13 (citing *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995)). Accordingly, we afford the language used in its plain, grammatical, and ordinary meaning unless doing so would clearly defeat the parties' intentions or the instrument clearly shows that the parties used the terms in a different or technical sense. *Nettye*, 639 S.W.3d at 690 (citing *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas Co.*, 590 S.W.3d 471, 479 (Tex. 2019)); *URI*, 543 S.W.3d at 764 (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *Hysaw*, 483 S.W.3d at 13 ("Words and phrases

11

generally bear their ordinary meaning unless the context supports a technical meaning or a different understanding."). Similarly, apparent inconsistencies or contradictions in the language that is used must be harmonized, to the extent possible, by construing the document as a whole. *Hysaw*, 483 S.W.3d at 13 (citing *Luckel*, 819 S.W.2d at 462).

Because words are imperfect implements of communication, their meaning often turns upon use, adaptation, and context as they are employed to fit various and varying situations. *URI*, 543 S.W.3d at 764. Therefore, we construe words in the context in which they are used. *Id.* Because context may encompass the circumstances present at the time the deed was executed, our task is to determine, objectively, what an ordinary person using those words under the circumstances in which they are expressed would understand them to mean. *Id.* "But there are limits. We cannot employ surrounding facts and circumstances to make [deed] language say something it unambiguously does not . . . ." *Nettye*, 639 S.W.3d at 690 (citing *URI*, 543 S.W.3d at 763). "Rather, the 'facts and circumstances can only provide context that elucidates the meaning of the words employed, and nothing else,' and they can only give [deed] language a meaning to which it is 'reasonably susceptible.'" *Id.* (quoting *URI*, 543 S.W.3d at 763). "In other words, such evidence may not be 'used to add, alter, or change the [deed's] agreed-to terms.'" *Id.* (quoting *Barrow-Shaver*, 590 S.W.3d at 485); *URI*, 543 S.W.3d at 758.

B. *The Correction Instrument Statutes*

Since their enactment in 2011, the Correction Instrument statutes have codified the procedures required for the execution of valid correction instruments. TEX. PROP. CODE ANN. §§ 5.027–.031 (West 2021). The statutes also provide certain protections and presumptions for correction instruments that comply with these

procedures and permit the use of correction instruments to make both material and nonmaterial corrections under certain circumstances. *Id.*

To make material corrections to the original deed, the statutes require that a correction deed, to be valid and enforceable, must be (1) executed by the original parties to the recorded instrument of conveyance or, if applicable, by a party's heirs, successors, or assigns, and (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded. *Id.* § 5.029(b). A correction deed that complies with Section 5.029 receives certain protections and presumptions and is (1) effective as of the effective date of the original instrument; (2) prima facie evidence of the facts stated in the correction instrument; (3) presumed to be true; (4) subject to rebuttal; and (5) notice to a subsequent buyer of the facts stated in the correction instrument. *Id.* § 5.030.

The statutes also contain a retroactive component: correction deeds that were recorded before the statutes' effective date of September 1, 2011, such as the 1960 Correction Deed in this case, need not strictly comply with the statutory requirements—rather, only *substantial compliance* is required.[3] *Id.* § 5.031. Older correction deeds receive the same protections and presumptions that are set out in Section 5.030, "unless a court of competent jurisdiction renders a final judgment determining that the correction instrument does not substantially comply with Section . . . 5.029." *Id.*

---

[3]Although the Correction Instrument statutes do not define what constitutes substantial compliance, generally "[the] phrase means that one has performed the 'essential requirements' of a statute, and it excuses deviations which do not seriously hinder the legislature's purpose in imposing such requirements." *Endeavor Energy*, 644 S.W.3d at 220 (quoting *AIC Mgmt. Co. v. AT&T Mobility, LLC*, No. 01-16-00896-CV, 2018 WL 1189865, at *9 (Tex. App.—Houston [1st Dist.] Mar. 8, 2018, pet. denied) (mem. op.)); *see U. Lawrence Boze & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 27 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (interpreting Section 5.029); *see also Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 403 (Tex. 2009) ("[S]ubstantial compliance with a statute means compliance with its essential requirements." (alteration in original)).

## IV. *Analysis*

### A. *The 1960 Correction Deed is Valid and Enforceable*

We first address Appellants' challenge to the validity of the 1960 Correction Deed because our holding on this point will determine whether we must address and dispose of other issues that have been raised in this appeal.

Appellants contend that the Correction Deed is void and invalid because it (1) does not correct any error or ambiguity that is subject to correction under the Correction Instrument statutes, and (2) was not *signed* by all original parties to the original deed. Consequently, Appellants reason that the Correction Deed is not entitled to any of the statutory presumptions or protections provided by the Correction Instrument statutes. We disagree on both points.

### 1. *No Facial "Error or Ambiguity" is Required*

Appellants first argue that the original deed that recited the conveyance between Clay and Joe Mac and LaVerne did not contain any error regarding the conveyed royalty interest, but instead accurately expressed the parties' intent to "convey an undivided 70/160 interest in royalty" to Joe Mac and LaVerne.

In support of this argument, Appellants assert that the Correction Instrument statutes are not permissive; they simply provide that a correction deed "may" correct an "ambiguity or error" in an original recorded instrument of conveyance. PROP. § 5.027(a). According to Appellants, the Contract for Sale confirms that Clay retained 70/160 of the royalty interest in the property and Joe Mac and LaVerne received by conveyance an equal 70/160 interest. Appellants reason that we should consider the Contract for Sale because it provides objective and surrounding context to the execution of the original deed that confirms there was no error in the original deed; therefore, no valid basis existed for the parties to execute the Correction Deed. Appellants further contend that because the intent to convey a 70/160 royalty interest

14

is uniformly manifested from both the text of the original deed and the context surrounding its execution, no error or ambiguity subject to correction exists; therefore, the 1960 Correction Deed is void and invalid. Appellants' contentions are misplaced.

There is no requirement that an error or ambiguity must exist in the original deed for a correction deed to be valid. *See id.* §§ 5.027–.031; *Heredia v. Zimprich*, 559 S.W.3d 223, 230 (Tex. App.—El Paso 2018, no pet.) ("The statutes pertaining to correction deeds do not limit the use of correction deeds to correct facial imperfections in the original warranty deed or in the chain of title, nor is there a requirement that there be a mutual mistake which caused a defect or imperfection in the original warranty deed."). To the contrary, the Correction Instrument statutes contain broad authorizations to correct original instruments, with few limitations. *See Endeavor Energy*, 644 S.W.3d at 223 ("[T]his correction-by-agreement remedy is a nonjudicial process that is designed to promote efficiency in non-adversarial circumstances." (citing *Broadway Nat'l Bank v. Yates Energy Corp.*, 631 S.W.3d 16, 29 (Tex. 2021))).

Parties to the original instrument may correct "an ambiguity or error," including the "extent of the interest conveyed." PROP. §§ 5.027(a), 5.030(b). However, the correction instrument conveys nothing; it simply "replaces and is a substitute for the original instrument" and clarifies the scope of the conveyed interests. *Id.* § 5.030(b); *Broadway Nat'l Bank*, 631 S.W.3d at 29; *Endeavor Energy*, 644 S.W.3d at 222. The statutes do not define "ambiguity or error." *See* PROP. §§ 5.027–.031. Rather, the parties' compliance with the statutory requirements regarding the execution and recording of the correction instrument determines the instrument's validity and effectiveness. *See id.* § 5.027(a). Thus, Appellants' focus here is misplaced—the validity of the 1960 Correction Deed turns on the original parties' compliance with these statutory requirements which are necessary to

validate a correction deed, not on the apparent intent of the parties when they executed the original instrument.

For this reason, we decline to examine the original deed or the Contract for Sale as part of our construction and analysis of the Correction Deed. Although we may consider the circumstances surrounding the Correction Deed's execution as an aid in the construction of the deed's language, we may not use or consider extrinsic evidence to search for the parties' intent beyond the meaning that the deed's language reasonably yields when construed in context. *Barrow-Shaver*, 590 S.W.3d at 483 (citing *URI*, 543 S.W.3d at 763). Indeed, looking to the substantive content of the original deed or the Contract for Sale would require that we discern the parties' intent beyond the Correction Deed's language. *Id.* (declining to consider the parties' substantive negotiations as part of the surrounding facts and circumstances that give context to the contract at issue).

### 2. Original Parties are Required to "Execute," not Sign, the Correction Deed

Appellants argue that the Correction Deed is void and invalid because LaVerne, as an original grantee, did not *sign* it. However, the absence of LaVerne's signature is of no consequence. As explained below, we hold that because Joe Mac signed the Correction Deed on behalf of *the grantees*, which included LaVerne, the deed substantially complied with the applicable statutory requirements for a pre-2011 correction deed that makes material corrections to the original instrument; therefore, the Correction Deed is valid and enforceable.

Importantly, it has been held that a correction deed that does not comply or even substantially comply with Section 5.029 is not necessarily void. *Lockhart as Tr. of Lockhart Family Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89, 110 (Tex. App.—El Paso 2021, pet. denied) (holding that a correction deed was not void, but merely voidable, because although Lockhart was not an original grantee, as

16

executor of the original grantees' estate, she had the authority to convey the subject interests and did so by executing the correction deed). Substantial compliance with Section 5.029 is significant because it triggers certain effects under the statute—a correction deed is (1) effective as of the date the original instrument of conveyance is recorded; (2) prima facie evidence of the facts stated in the correction instrument; (3) presumed to be true; (4) subject to rebuttal, and (5) notice to a subsequent buyer of the facts stated in the correction instrument. PROP. §§ 5.030(a), .031. Thus, a correction deed that does not comply with Section 5.029 is not "effective 'to the same extent as provided by Section 5.030[,]' [but] nothing in the statute renders it without *any* effect." *Lockhart*, 621 S.W.3d at 110 (quoting PROP. § 5.031) (alteration in original).

Turning to the substance of Appellants' contention, Section 5.029 governs correction instruments that make material corrections, including this one. PROP. § 5.029(b). The correction at issue here is material because it alters the *manner* in which the royalty interests are conveyed in the original instrument and, potentially, the *extent* of the interests conveyed. As we have said, under Section 5.029(b), a correction deed is effective if it was (1) *executed* by each party to the original recorded instrument of conveyance or, if applicable, a party's heirs, successors, or assigns, and (2) recorded in each county in which the original instrument is recorded. *Id.*

Correction instruments executed before 2011 need only "substantially comp[ly]" with the requirements of Section 5.029. *See id.* § 5.031. This applies, of course, to the 1960 Correction Deed in this case. The statutory text does not define what constitutes "substantial compliance" but, in construing Section 5.031, we have held that the term means that "one has performed the essential requirements of a statute, and it excuses deviations which do not seriously hinder the legislature's

17

purpose in imposing such requirements." *Endeavor Energy*, 644 S.W.3d at 220 (internal citations omitted).

Only the first requirement of Section 5.029(b)—that all parties to the original instrument must *execute* the correction deed—is at issue here. Appellants argue that because Joe Mac signed the Correction Deed on LaVerne's behalf, it was not *executed* by *each* party to the original recorded instrument; therefore, the Correction Deed does not comply with Section 5.029(b). We disagree for two reasons.

First, the statute only requires that each party to the original recorded instrument must *execute*, not sign, the Correction Deed. PROP. § 5.029(b)(1). Nothing in the text of the Correction Instrument statutes specifically requires that *all* the parties to the original instrument of conveyance must *sign* the Correction Deed. *See* PROP. §§ 5.027–.031. Second, even if the statute required that each party to the original instrument of conveyance must sign the Correction Deed, *this* deed need only "substantially comply" with Section 5.029 to be valid and effective, and here Joe Mac signed it on behalf of himself and LaVerne. *See id.* § 5.031.

Section 5.029(b) states that all the parties to the original deed must "execute" the Correction Deed. *Id.* § 5.029(b)(1). Although only Clay and Joe Mac signed the Correction Deed, the deed recites that Joe Mac signed it "on behalf of the grantees," which were identified as himself and LaVerne. The question we must decide is: does a correction deed substantially comply with Section 5.029(b) if it is signed by a grantee's representative? The answer in this instance is yes. Here, because the person who signed the correction deed (Joe Mac) did so in a representative capacity and is also the other original grantee, and because the correction deed recites that, by his signature, Joe Mac executed the Correction Deed on behalf of all grantees, which included LaVerne, we hold that this Correction Deed substantially complies with Section 5.029. Furthermore, even if Joe Mac lacked the authority to sign on behalf of LaVerne, the Correction Deed would not be void, but would be only

voidable. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (recognizing that a deed obtained by fraud is voidable, rather than void, and remains effective until it is set aside); *Nobles v. Marcus*, 533 S.W.2d 923, 926–27 (Tex. 1976) (holding that a deed signed without proper authority was voidable, not void, and constituted prima facie evidence of title).

Generally, a party may execute a legal document without signing it. The term "execute" is not limited to only mean "sign." *See Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010) (rejecting the argument that "execute" means "to sign" and noting that "Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent") (citing *Simmons & Simmons Constr. Co., v. Rea*, 286 S.W.2d 415, 418 (Tex. 1956)). Rather, the term "execute" is defined in several respects. *Id.* Black's Law Dictionary defines "execute" as "[t]o perform or complete (a contract or duty) . . . [t]o change (as a legal interest) from one form to another . . . *[t]o make (a legal document) valid by signing*; to bring (a legal document) into its final, legally enforceable form." *Execute*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

To be sure, even in the context of older, pre-2011 correction instruments, it appears that a correction deed must be signed by at least *some* of the parties, if not necessarily *all* of them, in order to substantially comply with Section 5.029. *See Tanya L. McCabe Tr. v. Ranger Energy, LLC*, 531 S.W.3d 783, 798–99 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Edwards Aquifer Auth.*, 291 S.W.3d at 403) (holding that correction instruments that were not executed by the original parties, or their successors, did not substantially comply with Section 5.029 because execution by each original party is an essential statutory requirement); *see also Lockhart*, 621 S.W.3d at 110 (holding a 2014 correction deed that was not signed by the original grantees did not comply with Section 5.029 but was not void

19

because the executor and trustee who executed the correction deed had the authority and capacity to do so). This leaves open the possibility that a grantee or grantor to the original instrument of conveyance may sign the correction deed on behalf of another grantee or grantor in order to at least substantially comply with the statutory requirement that all parties *execute* the correction deed.

We recently interpreted the Correction Instrument statutes in *Endeavor Energy*. In that case, an original grantee signed a pre-2011 correction deed on behalf of his deceased wife, the other original grantee. *Endeavor Energy*, 644 S.W.3d at 223–25. We held that his signature rendered the correction deed substantially compliant with Section 5.029 because, as the executor, trustee, and beneficiary of her testamentary trust, the husband was his deceased wife's sole successor within the meaning of the statute. *Id.*; *see Broadway Nat'l Bank*, 631 S.W.3d at 23–26. The correction deed in *Endeavor Energy* also recited that the husband and wife were parties to the original instrument of conveyance, that the wife had passed before the corrected deed was signed, and that the parties intended that the correction deed clarify and replace the original warranty deed. *Endeavor Energy*, 644 S.W.3d at 224. The husband signed the correction deed on behalf of the "Grantees," but the signature block did not indicate in which capacity or capacities he had signed— whether individually, as the executor, as trustee, or some combination of the three. *Id.* at 223–24.

In *Endeavor Energy*, we further concluded that, as the sole successor to his deceased wife's interests, and in light of the correction deed recitals, the husband, by his signature, effectively executed the correction deed in all applicable capacities, and alone possessed the authority to bind her interests. *Id.* at 224; *see also W. 17th Res., LLC v. Pawelek*, 482 S.W.3d 690, 694–95 (Tex. App.—San Antonio 2015, pet. denied) (determining that because the deed's granting clause conveyed "all" of the subject property, the deed conveyed interests held by the signee individually and in

20

her capacity as trustee, even though she did not disclose her capacity "as trustee" when she signed the deed).

The circumstance before us resembles *Endeavor Energy* in that, in both instances, an original grantee signed the correction deed on behalf of another original grantee.[4]  Further, as in *Endeavor Energy*, the Correction Deed here need only substantially comply with the statute.  However, unlike in *Endeavor Energy*, in this case Joe Mac was neither LaVerne's executor nor her trustee, and he was certainly not her "successor" within the meaning of the statute.  LaVerne was not deceased at the time the parties executed the correction deed.  For whatever reason, she simply did not sign it.

But the statute's provisions do not specifically require that she *sign* it.  As we have discussed, it is the *execution* of the correction deed by the original parties, rather than specifically signing it, that is an essential statutory requirement.  *Tanya L. McCabe Tr.*, 531 S.W.3d at 798–99 ("[W]e have no basis upon which to conclude that the requirement of execution 'by each party to the recorded original instrument' is not 'essential' to fulfilling the Legislature's standard for permitting a material correction . . . .") (quoting PROP. § 5.029(b)).  And, in fact, the Correction Deed itself explicitly absolves LaVerne of any obligation to sign it.[5]  *See Mid-Continent Cas. Co.*, 323 S.W.3d at 157.  Similar to the correction deed in *Endeavor Energy*, the 1960 Correction Deed here recited that Joe Mac signed it "*on behalf of the grantees.*"

---

[4]This appeal differs from *Lockhart* in at least one key respect: there, neither original grantee signed the correction deeds, whereas here, at least one of the original grantees did sign the instrument.  *Lockhart*, 621 S.W.3d at 95–96, 101–110 (discussing the executor-trustee's capacity and authority to convey the interests through the noncompliant correction deeds).

[5]Although the parties debate the applicability and constitutionality of the coverture statute that was in effect at the time, we need not engage in such an analysis in light of our holdings in this case.  *See* TEX. REV. CIV. STAT. ANN. art. 4619 (1925), *repealed by* Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 6, 1969 TEX. GEN. LAWS 2707, 2733.

The Correction Deed's recital that Joe Mac signed it "on behalf of the grantees" manifests that the parties to the instrument intended Joe Mac's signature to be effective, representative, and bind both grantees. *See Endeavor Energy*, 644 S.W.3d at 223–25. Joe Mac's signature in this representative capacity was sufficient to at least substantially comply with the statutory requirement that the Correction Deed be executed by each party to the original instrument. Absent a prohibition in the text of the statute, we see no reason why one grantee's signature "on behalf of the grantees" cannot at least substantially comply with the statute's requirement that all parties to the original instrument must execute the correction deed. *See* PROP. §§ 5.029(b), .031; *Endeavor Energy*, 644 S.W.3d at 223–24. Accordingly, we hold that it may, and it does so in this instance.

Because the 1960 Correction Deed substantially complies with Section 5.029, its content is prima facie evidence of the facts stated in the correction instrument and is presumed to be true. PROP. § 5.030(a)(2)–(3). This prima facie showing is subject to rebuttal, but Appellants have not rebutted the recited facts. *See id.* § 5.030(a)(4). Rather, Appellants present only a limited challenge to the validity of the Correction Deed and its legal effect based on Joe Mac's signature. Appellants do not specifically challenge whether LaVerne authorized Joe Mac to sign on her behalf, nor do they challenge Joe Mac's capacity to sign as LaVerne's representative, beyond simply stating that the Correction Deed does not indicate such authorization.[6] But the facts recited in the substantially compliant Correction Deed, including that Joe Mac signed on behalf of the grantees, which included LaVerne, are presumed to be true. Therefore, absent evidence that rebuts this recital, and we

---

[6]Appellants do challenge Joe Mac's representative capacity only to the extent that it is predicated on the coverture laws in effect at the time.

22

have found none, we presume that Joe Mac was authorized to execute the Correction Deed on LaVerne's behalf.

We conclude, as the trial court did, that the 1960 Correction Deed is valid and enforceable. Therefore, the trial court did not err when it granted summary judgment in favor of Appellees on this point. Accordingly, we overrule Appellants' second sub-issue on appeal.

We now turn to Appellants' deed construction challenge to the royalty interests that were excepted from the deed's general warranty grant.

B. *The Plain Language of the Correction Deed Indicates Only One Exception*

Appellants contend that the plain language of the Correction Deed results in a grant of a 70/160 royalty interest to Joe Mac and LaVerne because the 1960 Correction Deed contained a single exception of a 90/160 royalty interest, which also encompassed the previously conveyed 20/160 royalty interest owned by unrelated third parties. We agree. The Correction Deed unambiguously expresses an objective intent to convey all of the subject property to Joe Mac and LaVerne, except (as relevant here) a 90/160 royalty interest which Clay reserved for himself and his heirs and successors, 20/160 of which was previously conveyed by Clay in the 1950s to third parties.

Three particular components of the Correction Deed's text compel this construction of the parties' intent: (1) the granting clause, which conveys "all" the subject property "except" an undivided 90/160 interest reserved for Clay, and his heirs and successors, (2) the past tense form of the sentence that contains the purported second exception, and (3) the backwards-looking reference of the sentence that contains the purported second exception. Further, Appellants' construction accommodates and harmonizes *all* of the deed's language, including that upon which Appellees rely, whereas Appellees' construction fails to do so.

23

In the 1960 Correction Deed, Clay granted and conveyed to Joe Mac and LaVerne "all" of the described property, except for the following reservation:

> EXCEPT that the Grantor reserves unto himself, his heirs, executors and assigns, an undivided 90/160ths of the oil royalty, gas royalty, and royalty in other minerals, together with the right to receive one-half (1/2) of all bonuses, and delay rentals paid to the Grantee in connection with the leasing of such land for oil, gas and other minerals.

> It is the intention hereof to grant unto the grantee the right to execute all oil, gas and other mineral leases on such land without the joinder of the grantor, his heirs or assigns, but one-half (1/2) of the proceeds of such leasing is to be paid over to the grantor herein. Third Parties, who are not parties to this deed own 20/160ths of the oil royalty, gas royalty and royalty in other minerals, and this ownership by Third Parties have been excepted in this conveyance in favor of such Third Parties, but the remaining portion of the exceptions herein are to remain the property of the Grantor, his heirs, executors and assigns.

Appellees' deed construction theory is that the Correction Deed references two royalty interest exceptions—90/160 and 20/160—and specifically refers to plural "exceptions." Appellees contend that the first exception of a 90/160 interest is reserved by the grantor "unto himself" whereas the purported second exception of a 20/160 interest is excepted "in favor of such third parties." The parties to the Correction Deed, Appellees reason, specifically distinguished between the two exceptions because the deed plainly refers to two exceptions, which consist of different interest amounts and are owned by different parties. Nevertheless, Appellees' two-exception reading fails because it ignores other deed language which cannot be harmonized with their construction, and Appellants' construction harmonizes *all* of the deed language, including that upon which Appellees rely.

1. *Only Appellants' Single-Exception Construction Harmonizes the Text*

In this case, Appellants' construction accounts for and harmonizes all of the Correction Deed's language, including that upon which Appellees rely; Appellees'

24

does not. Appellants' construction harmonizes (1) the granting clause, which conveys "all" the subject property "except" for a 90/160 interest reserved for Clay, (2) the past tense form of the purported second exception, (3) the referential direction of the purported second exception, and (4) the deed's use of the term "exceptions" in the plural tense.

We begin with the granting clause, not because it commands higher priority than any other provision, but because it is chronologically the first component in the instrument that is relevant to the issue we analyze here. *Piranha Partners*, 596 S.W.3d at 753 ("[O]ur 'holistic and harmonizing approach' to construing deeds . . . and similar documents requires us to consider *all* of the [deed's] provisions and prohibits us from giving greater weight to the granting clause or to any other particular types of clauses." (citing *Luckel*, 819 S.W.2d at 462–64)).

The Correction Deed conveys "all" of the subject property to Joe Mac and LaVerne, "except . . . an undivided 90/160ths" interest, which Clay reserved for himself, and his heirs and assigns. Clay, as grantor, was not required to convey the estate in this "all-except" manner but he chose to do so. *See id.* at 748 ("A grantor may withhold for itself a part of its estate *either* by granting the entire estate but reserving the portion it desires to retain *or* by granting only the portion it desires to convey."). The granting clause clearly identifies the property that is excepted from Clay's grant, including a 90/160 royalty interest. *See id.*; *Gonzalez v. Janssen*, 553 S.W.3d 633, 638 (Tex. App.—San Antonio 2018, pet. denied) ("Exceptions, which generally are strictly construed against the grantor, must identify, with reasonable certainty, the property to be excepted from the larger conveyance."). Therefore, and thus far, the text of the Correction Deed indicates that it conveys "all" the subject property but for a single exception—a 90/160 royalty interest that Clay reserved for himself, and his heirs and assigns.

25

Next, the paragraph that follows the granting clause explains the intent of the parties to the Correction Deed.[7] This paragraph includes the purported second exception upon which Appellees' theory rests. The purported second exception, identified in the sentence below, is central to the disposition of the parties' arguments:

> Third parties, who are not parties to this deed own 20/160ths of the oil royalty, gas royalty and royalty in other minerals, and this ownership by third parties have been excepted in this conveyance in favor of such third parties, but the remaining portion of the exceptions herein are to remain the property of the grantor, his heirs, executors and assigns.

Two characteristics of this sentence establish that the purported second exception is not an exception at all, but rather, that the parties only intended for there to be a single exception—a 90/160 of the royalty. The purpose of this sentence is simply to explain that 20/160 of Clay's 90/160 interest are owned by unrelated third parties and that this previously conveyed interest was excepted from this conveyance in favor of those third parties.

The first of these characteristics is that the sentence uses the past tense to state that the 20/160 interest already "*have been excepted* in this conveyance." It is difficult to reconcile this past-tense verb form with Appellees' contention that the reference to the 20/160 interest constitutes a second, independent exception from the overall conveyance. Compare this language to the present tense used in the first exception (which all parties agree is a valid exception): the grantor "reserves" a 90/160 interest unto himself. The stark difference in verb tense between these two phrases poses a significant challenge to Appellees' two-exception construction. And Appellees offer no harmonizing explanation for this obstacle.

---

[7]As indicated by its opening line: "It is the intention hereof to grant unto the grantee . . . ."

Second, when the sentence states that the 20/160 interest "have been *excepted in this conveyance*," it refers back to the first exception. Especially when combined with the past-tense form of "have been excepted," this reference is backwards-looking and it refers to a previous, specific location in the Correction Deed's text. The 90/160 interest exception is the only plausible place that satisfies that specification. Given these first two points, we cannot discern how the deed's language could permit a two-exception construction. Further, Appellees' construction fails to account for and harmonize these crucial aspects of the Correction Deed's text. *See Piranha Partners*, 596 S.W.3d at 747 (reaffirming the rules requiring that courts "avoid any construction that renders any provisions meaningless" and to "consider and construe all of a contract's provisions together 'so that the effect or meaning of one part on any other part may be determined'") (quoting *Citizens Nat'l Bank v. Tx. & P. Ry. Co.*, 150 S.W.2d 1003, 1006 (Tex. 1941)).

The cornerstone of Appellees' construction—the plural "exceptions"—lies in the final portion of the sentence: "but the remaining portion of the exceptions herein are to remain the property of the grantor." But when read in the greater context of the whole instrument, the plural form of "exceptions" alone does not establish that this deed contains two exceptions from its grant of the subject property. Rather, Appellees' two-exception theory fails to account for and harmonize the characteristics discussed above in the other sections of the sentence—the past tense and referential direction. Contrary to indicating the presence of two exceptions, in the context of the instrument as a whole, "exceptions" *must* refer to the 90/160 and the 20/160 interests as being part of the same, single exception.

At first glance, one might be tempted to criticize this construction as absurd; after all, to say that "exceptions" means "portions of one exception" and not multiple "exceptions" may intuitively appear to be inconsistent with what one might consider

27

to be the plain meaning of the term. In the realm of legal construction, however, sound textual construction can sometimes defy logic or ordinary intuition, for various reasons. *See, e.g.*, *Van Dyke v. Navigator Grp.*, No. 21-0146, 2023 WL 2053175, at \*3–8 (Tex. 2023) (holding that the meaning of "one-half of one-eighth" in the context of a 1924 mineral-conveyance instrument is one-half of the entire mineral estate, rather than one-sixteenth). But our task is not merely to affirm intuition. *See Van Dyke*, 2023 WL 2053175, at \*4 ("[The challenge] is to overcome the cognitive dissonance that arises because, at least at first glance, 'one-half of one-eighth' seems unusually clear yet is alleged to mean something radically different from what we might expect."). Rather, we must harmonize *all* the language within the four corners of the instrument by analyzing the ordinary meaning of the words in their context, with the aid of well-settled principles of contract and deed construction. *See Piranha Partners*, 596 S.W.3d at 747 (discussing and distinguishing some of the "'arbitrary', 'mechanical,' 'default' rules we have 'cast off' and the 'well-settled contract-construction principles' on which we continue to rely when construing deeds and other contracts") (quoting *Wenske*, 521 S.W.3d at 795); *Hysaw*, 483 S.W.3d at 13.

Here, only Appellants' argument accounts for all of this language and leaves nothing to surplusage or lack of meaning. *See Piranha Partners*, 596 S.W.3d at 747 (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). To accept Appellees' contention that the use of the plural term "exceptions" mandates a two-exception reading would require that we ignore (1) the granting clause, which conveys "all" the subject property "except" for a 90/160 interest reserved to Clay, (2) the past tense of "have been excepted," and (3) the backwards-looking reference of "in this conveyance," which, in tandem with (2) above, indicates that the 20/160 interest has already been excepted somewhere else in the instrument—within the exception of the 90/160 interest reserved for Clay.

Conversely, Appellees' two-exception construction ignores the very language of the sentence which they argue constitutes the second exception. The Correction Deed text plainly states that ownership of the unrelated third-parties' 20/160 interest "*have been excepted in this conveyance.*" Appellees offer no explanation or attempt to reconcile and harmonize the past-tense verb form and the backwards-looking reference of this phrase with their theory of the sentence's meaning. Appellants, on the other hand, explain that this language anchors the 20/160 interest owned by the unrelated third parties to the single exception of the 90/160 interest as stated in the granting clause.

Rather than addressing and attempting to harmonize the past-tense verb form, Appellees contend that, notwithstanding this, the two purported exceptions explicitly reserve royalty interests for two separate subjects—the grantor and "third parties." The distinction shows, Appellees reason, that the original parties' intended to make two separate and distinct exceptions and that Appellants' one-exception construction fails to give effect to this language. We disagree.

It is true that the two purported exceptions are in favor of different subjects. But this distinction can be reconciled with a one-exception construction. This is because, in this context, "exceptions" refers to two portions of the same, single exception. A sensible reason to distinguish the two portions in the first place may be that they are owned by different subjects.[8] This does not undermine a single-

---

[8]Appellees' two-exception theory not only contradicts the plain language of the Correction Deed, it also suggests that the parties intended to reserve or except an interest in favor of a party or parties not privy to the deed, which is contrary to Texas law. A reservation or exception cannot be made in favor of a stranger to the deed. *Jackson v. McKenney*, 602 S.W.2d 124, 126 (Tex. App.—Eastland 1980, writ ref'd n.r.e.) (citing *Joiner v. Sullivan*, 260 S.W.2d 439, 440 (Tex. App.—Texarkana 1953, writ ref'd)); *see U.S. Invention Corp. v. Betts*, 495 S.W.3d 20, 25 (Tex. App.—Waco 2016, pet. denied) ("A reservation or exception in favor of a stranger to a conveyance is inoperative and cannot operate as a conveyance to the stranger of an interest in land.") (quoting *MGJ Corp. v. City of Houston*, 544 S.W.2d 171, 174 (Tex. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.)). If the purported second exception was truly an independent, separate exception and not simply a portion of the single exception of the 90/160 interest, it would run afoul

exception construction. On the other hand, as we have said, the past-tense verb form, when combined with the backwards-looking reference, cannot be reconciled with a two-exception construction. Therefore, we are left with only one reasonable construction that accounts for all of the deed's language: there is only one exception.

This one-exception construction also compels a particular reading of the whole phrase "the remaining portion of the exceptions herein are to remain the property of the grantor, his heirs, executors and assigns." Here, the only exception stated in the Correction Deed that pertains to the royalty interests is the clause that excepts and reserves Clay's 90/160 interest. Therefore, the only interpretation that gives meaning to this entire phrase is that 90/160 less 20/160 is the "remaining portion" of Clay's interest in the property.

By contrast, Appellees' two-exception theory would seriously reduce, and perhaps extinguish, the import of the reference to the phrase "remaining portion." If 90/160 and 20/160 are two distinct and independent exceptions, as Appellees suggest, it is unclear what "remaining portion" refers to. A portion is a part of a greater whole. *See Portion*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A share or allotted part (as of an estate)."). Appellees' theory characterizes these exceptions not as portions of the same whole, but as distinct and independent. Again, this two-exception reading does not comport with the text of the Correction Deed when it is harmonized in its entirety.

When read as a harmonized whole, the 1960 Correction Deed permits only one construction: there is one exception to the grant of the subject property. That exception includes a 90/160 royalty interest that Clay reserved for himself, and his

---

of this rule. Instead, our construction permits and gives meaning to this language in favor of "strangers to the deed" because we interpret the 20/160 interest to be a portion of the 90/160 exception which the grantor reserved unto himself from the general warranty deed. The "intent paragraph" simply explains that a 20/160 interest *of* the 90/160 interest is owned by third parties.

heirs and assigns. The Correction Deed also explains that a 20/160 portion of Clay's excepted 90/160 interest belongs to and has been excepted in this conveyance in favor of unrelated third parties; the remaining portion of the excepted interest (70/160) is to remain the property of the grantor (Clay).

Further, simple math dictates the same result. After Clay conveyed 20/160 of his interest to unrelated third parties, he retained a 140/160 interest in the property—his "remaining" interests. When the original warranty deed, and later the Correction Deed, divided Clay's "remaining" interest in the property, the effect and intent of the parties was that the interest reserved for and retained by Clay (and his heirs and assigns) and the interest conveyed to the Gaskins (Joe Mac and LaVerne) would be the same—a 70/160 royalty interest.

We hold that the Correction Deed unambiguously conveyed a 70/160 royalty interest to Joe Mac and LaVerne, as grantees, and that Clay, as grantor, reserved and retained ownership of a 70/160 royalty interest. We further hold that the excepted 90/160 royalty interest reserved for Clay, and his heirs and assigns, includes the previously conveyed 20/160 royalty interest owned by the unrelated third parties. The trial court erred in concluding otherwise. Accordingly, we sustain Appellants' first sub-issue on appeal.

Our disposition of Appellants' first and second sub-issues necessarily resolves part of their sixth sub-issue—that the trial court erred when it entered declarations and quieted title in favor of Appellees rather than in favor of Appellants. With respect to the trial court's declarations, our construction of the Correction Deed's validity and effect requires that we sustain Appellants' sixth sub-issue on this point as well.[9]

---

[9]Given our construction of the Correction Deed, we need not address Appellants' assertion that Appellees are estopped from claiming a greater interest. *See* TEX. R. APP. P. 47.1.

31

### 2. *The Remaining Construction Arguments Are Contingent*

The remaining construction arguments raised by the parties are contingent on our holding above.[10]  For example, Appellants argue that the "greatest possible estate doctrine" supports their position.  To the contrary, this doctrine simply holds that "courts will construe a deed to confer upon the grantee the greatest estate that the terms of the instrument allow."  *Trial v. Dragon*, 593 S.W.3d 313, 322 (Tex. 2019); *see* PROP. § 5.001(a) ("An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law.").  Thus, the greatest estate that can be conveyed is contingent on our construction of the terms of the Construction Deed.

Similarly, the parties debate the applicability of the presumption of proportionality between the interests in the mineral estate.  *See, e.g.*, *Wenske*, 521 S.W.3d at 797 ("Generally, 'the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty.'" (quoting *Woods v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954))).  This presumption can be overcome by a plainly expressed intent to convey a different share of such interests.  *Patrick v. Barrett*, 734 S.W.2d 646, 648 (Tex. 1987) (citing *Benge v. Scharbauer*, 259 S.W.2d 166, 168–69 (Tex. 1953)); *Brooke-Willbanks*, 660 S.W.3d at 565.  Again, the effect this presumption may have on the Correction Deed is contingent on our construction of its language and meaning.  Because we have held that the parties clearly expressed an intent to convey "all" of the royalty interests except for the reserved 90/160 interest, the presumption is overcome.

---

[10]We also need not address Appellants' breach of warranty of title claim because we have determined that the Correction Deed conveyed 70/160 of the royalty interest.  *See* TEX. R. APP. P. 47.1.

C. *Appellants' Counterclaim for Trespass to Try Title Fails*

In their motion for summary judgment, which the trial court granted, Appellees argued, *inter alia*, that *all* of Appellants' title counterclaims failed as a matter of law. Appellees' argument is premised on their two-exception theory of the Correction Deed's construction. Because we have held that the Correction Deed only contains a single exception of a 90/160 royalty interest, which includes a 20/160 interest previously conveyed to and owned by unrelated third parties, this argument fails as to each of Appellants' title counterclaims.

Nevertheless, Appellants' trespass-to-try-title counterclaim *does* fail as a matter of law (1) because asserting a trespass-to-try-title claim generally is not the appropriate vehicle to determine title to a nonpossessory royalty interest, and (2) because the Correction Deed is not void, Appellants cannot maintain this cause of action.[11]

Generally, nonpossessory interests, such as royalty interests, are not proper subjects of a trespass-to-try-title action; rather, the proper cause of action to assert is for declaratory judgment.[12] *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003); *Richmond v. Wells*, 395 S.W.3d 262, 267 (Tex. App.—Eastland

---

[11]In their traditional motion for summary judgment, Appellees asserted that a trespass-to-try-title action is inapplicable to a nonpossessory royalty interest. Appellants appear to essentially concede this point in their appellate briefing. Regardless, when the trial court's order does not specify the grounds for its grant of summary judgment, we will affirm the summary judgment if any of the theories presented in the motion are meritorious. *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 90 (Tex. App.—Eastland 2021, no pet.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).

[12]A trespass-to-try-title action adjudicates title or the right of possession of real property. *Lockhart*, 621 S.W.3d at 98 (citing *Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994)); *see* PROP. § 22.001. To prevail, the plaintiff must recover upon the strength of his own title. *Rogers*, 884 S.W.2d at 768 (citing *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982)). The plaintiff may recover by proving (1) a regular chain of conveyances from the sovereign, (2) superior title out of a common source, (3) title by limitations, or (4) prior possession which has not been abandoned. *Id.* (citing *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964)).

2012, no pet.) (citing *T-Vestco Litt-Vadu v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 289–90 (Tex. App.—Austin 1983, writ ref'd n.r.e.)); *see Lance v. Robinson*, 543 S.W.3d 723, 735–37 (Tex. 2018) (discussing the propriety of a trespass-to-try-title action); *see also* TEX. R. CIV. P. 784 (The "defendant in the [trespass to try title] action shall be the person in possession" of the property). However, "where a deed is absolutely void, a suit at law in trespass to try title may be maintained to recover the land without setting the deed aside . . . ." *Lockhart*, 621 S.W.3d at 101 (quoting *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942)).

Because we have held that the Correction Deed is valid and enforceable, we have necessarily disposed of and rejected Appellants' arguments that the Correction Deed is void. Therefore, Appellants cannot maintain a trespass-to-try-title action in this case, and the trial court did not err when it granted summary judgment in favor of Appellees on Appellants' trespass-to-try-title counterclaim. Accordingly, we sustain in part, and overrule in part, Appellants' fourth sub-issue on appeal.

The holdings that we have stated above necessarily dispose of this appeal; therefore, we need not address the remaining issues raised by the parties.[13] *See* TEX. R. APP. P. 47.1.

---

[13]Appellees' statute of limitations defense was only asserted to challenge Appellants' counterclaim to invalidate the Correction Deed. Nowhere do Appellees assert that Appellants are barred by limitations from only asserting counterclaims to quiet title and for declaratory judgment. With respect to their estoppel defense, Appellees asserted that Appellants were estopped from claiming title *in derogation of the Correction Deed*. We have held that Appellants hold title unambiguously under that deed. Likewise, Appellees cannot assert a bona-fide purchaser defense under our holdings today because Appellees possessed record notice of the Correction Deed. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) ("A purchaser is charged with knowledge of the provisions and contents of recorded instruments." "Purchasers are also charged with notice of the terms of deeds which form an essential link in their chain of ownership.") (internal citations omitted).

## V. *This Court's Ruling*

We affirm in part and reverse and render in part.

We affirm the trial court's judgment, in part, insofar as the trial court granted summary judgment in favor of Appellees and determined that (1) the Correction Deed is valid and enforceable, and (2) Appellants' counterclaim for trespass to try title fails as a matter law.

We reverse the trial court's judgment, in part, insofar as the trial court declared that Clay only conveyed a 50/160 royalty interest in the property to Joe Mac and LaVerne, and we render judgment that the Correction Deed reserved unto Clay (and his heirs and assigns), and conveyed collectively to Joe Mac and LaVerne, the same interest amount in the property—a 70/160 royalty interest.


W. STACY TROTTER
JUSTICE


June 8, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.